**F. W. PITTS et al., Plaintiffs,**

v.

**William B. CAMP, Comptroller of the Currency of the United States, Defendant.**

**Civ. A. No. 69-979.**

United States District Court,
D. South Carolina,
Florence Division.

Heard June 2, 1971.

Decided Aug. 17, 1971.

Benny R. Greer, of Greer & Chandler, Darlington, S. C., for plaintiffs.

Joseph O. Rogers, Jr., U. S. Atty. for the District of South Carolina, Columbia, S. C., William D. Ruckelshaus, Asst. Atty. Gen., Washington, D. C., Wistar D. Stuckey, Asst. U. S. Atty., Harland F. Leathers and A. James Barnes, Dept. of Justice, Washington, D. C., C. Westbrook Murphy, John E. Shockey and E. Jerry Higginson, Office of the Comptroller of the Currency, Washington, D. C., for defendant.

HEMPHILL, District Judge.

In August 1967, plaintiffs applied to the Comptroller of the Currency pursuant to 12 U.S.C. § 21 et seq. to organize a new bank in Hartsville, South Carolina. Plaintiffs, the organizers of the proposed new bank, filed information with the Comptroller and a field investigation was conducted by a national bank examiner. Based upon the file thus obtained, the Comptroller denied plaintiffs' application on April 15, 1968. Subsequent to the initial denial, plaintiffs submitted additional data and requested reconsideration by the Comptroller. The request for reconsideration was granted and a supplemental field examination was conducted. In July 1969 the Comptroller again denied plaintiffs' application. This action, whereby plaintiffs seek review of the decision of the Comptroller adverse to them, was commenced in November 1969.

Defendant moved to dismiss for want of jurisdiction of the subject matter, which motion was denied by the order of Judge Simons, October 19, 1970, D.C., 321 F.Supp. 407. At this point defendant has made the administrative file a part of the record in this case and moved for summary judgment thereon. Plaintiffs have undertaken certain discovery to which defendant objects on the ground that, as this determination must be made upon the record before the Comptroller, it cannot lead to admissible evidence. Plaintiffs have also moved for summary judgment upon the administrative record

pursuant to a theory hereinafter discussed.

The court has twice heard the argument of counsel, has considered the briefs of the parties and the administrative record. It appears to the court that discussion of the two legal arguments propounded by plaintiffs is largely dispositive of the issues presented.

■ First, in opposition to defendant's motion for summary judgment and in support of interrogatories served upon the defendant, plaintiffs argue that because the defendant did not hold a hearing on this application such additional information as plaintiffs may present must be considered by this court, in addition to the administrative file now a part of the record. Plaintiffs contend that if an adversary hearing is not held, they must be afforded the opportunity to build, whether by discovery or the taking of testimony, a record here, which additional record must be considered together with the administrative record in order that the court can make a *de novo* determination of the disputed facts. In this argument plaintiffs place their principal reliance upon First National Bank of Smithfield, N. C. v. Saxon, 352 F.2d 267 (4th Cir. 1965). While that case involved a branch bank application rather than the present application for a new charter, it held that the court should provide a hearing and judge *de novo* the validity of the Comptroller's action, setting aside that determination if it constituted an abuse of the Comptroller's discretion.[1] As this court understands that opinion and the subsequent order of a district judge for North Carolina in Bank of Haw River v. Saxon, 257 F.Supp. 74 (M. D.N.C.1966), the reason for the grant of a *de novo* hearing was the Comptroller's refusal to afford the aggrieved party a full and meaningful hearing. In this case no hearing was held, but plaintiffs did not demand or request such hearing. The regulations of the Comptroller provided in that regard:

(d) Hearings. For purposes of this part, the Comptroller of the Currency, in his sole discretion, may, upon request of any interested person or otherwise, order a hearing, either public or private. Such hearing shall be held at the time and place fixed by the Comptroller and shall be conducted by the Comptroller or such other person as he may designate. The person conducting such hearing shall have authority to decide who shall appear as a witness therein, the order of appearance, what testimony, data, or other material or information shall be received in evidence, and all other procedural matters arising during the course of or otherwise connected with such hearing. No person shall become a party to any matter pending before the Comptroller solely by reason of being permitted to appear or to submit testimony, evidence, data, or other material at a hearing. A hearing ordered by the Comptroller is not required by statute and is not subject to the provisions of the Administrative Procedure Act. Nothing contained herein shall be deemed to require the holding of a hearing by the Comptroller on any matter. The validity of the Comptroller's determination in any matter shall not be affected because a hearing was not held, whether or not such a hearing was requested by any person, or because of the procedures adopted at such hearing. (12 C.F.R. § 412(d)).

(e) Requiring information. For purposes of this part, the Comptroller of the Currency, in his sole discretion, may require any person, persons, bank, or banks submitting an application or request or any person, persons, bank or banks connected with the matter to which such application or request pertains, to submit such information, data, opinion of counsel, or other materials as may be specified by the Comptroller. Failure to comply with such demand of the Comptroller may

---

1. Judge Soboleff in his dissent pointed out the inherent difficulty in the "de novo" review there authorized.

be treated by him, in his sole discretion, as abandonment of the application or request to which the information, data, opinion of counsel, or other material relates. (12 C.F.R. § 412 (e)).

The Comptroller need not have granted any hearing in the matter (see, Bank of Smithfield, supra), and it appears from the regulation that such hearing, if granted, could have fallen short of providing plaintiffs with reasonable opportunity to present their case (see *Bank of Haw River*, supra). In either of those events, the plaintiffs would be entitled to present evidence in this court. However, plaintiffs did not request a hearing. Neither the record nor the argument convince the court that plaintiffs regarded the procedure utilized by the defendant as unfair. It is the result of the procedure, the defendant's determination, by which they are aggrieved. At this stage the court cannot say that had plaintiff asked for a hearing that an adequate one would, or would not have been provided. Though plaintiffs did not have a right to a hearing before the Comptroller, they had a right and, if they sought to rely on the absence thereof, an obligation to request such hearing. In First-Citizens Bank and Trust Co. v. Camp, 409 F.2d 1086 (4th Cir. 1969), the court stated of the bank complaining of procedural error:

> Its right to raise at the judicial level procedural objections not advanced before the administrative agency is suspect, because, ordinarily, a litigant is not entitled to remain mute and await the outcome of an agency's decision and, if it is unfavorable, attack it on the ground of asserted procedural defects not called to the agency's attention when, if in fact they were defects, they would have been correctible at the administrative level. [at 1088, 1089]

2. See United States v. Morgan, 313 U.S. 409, 421–422, 61 S.Ct. 999, 85 L.Ed. 1429 (1941) and Warren Bank v. Camp, 396 F.2d 52 (6th Cir. 1968), both of which

This court, therefore, concludes that its determination must be made from its consideration of the administrative record. The discovery sought by plaintiffs cannot aid in that consideration even if it were otherwise proper.[2] Therefore, the record being complete, it appears that there is no reason to delay the grant of judgment in this case.

Plaintiffs' motion for summary judgment is upon the ground that the record shows that they met all the requirements of 12 U.S.C. §§ 21–27 and that as a result the statute required that the Comptroller issue the certificate. The Comptroller argues that the decision to issue the certificate is committed to his discretion and that the factors considered in making the decision are:

> (b) Investigation. The Comptroller of the Currency may conduct such investigation as he deems necessary or proper. Matters investigated include:
>
> (1) The adequacy of the proposed banks capital structure.
>
> (2) The earning prospects of the proposed bank.
>
> (3) The convenience and needs of the community to be served by the proposed bank.
>
> (4) The character and general standing in the community or the applicants, prospective directors, proposed officers, and other employees, and other persons connected with the application or to be connected with the proposed bank.
>
> (5) The banking ability and experience of proposed officers and other employees.

If the persons referred to in subparagraph (4) of this paragraph are not ready, within 30 days after filing of the application, to submit to and cooperate in the investigation, the Comptroller may treat the application as abandoned. [12 C.F.R. 4.2(b)]

indicate that questions similar to those contained in plaintiffs' interrogations are improper.

In denying plaintiffs' initial application the defendant wrote:

> On the basis of information developed by our Field Investigation, together with all other pertinent data relating to the proposal, we have concluded that the factors in support of the establishment of a new National Bank in this area are not favorable.

And on reconsideration:

> You and the members of the group would be less than human not to feel strongly on this question which is of such importance to you. On each application we endeavor to develop the need and convenience factors in conjunction with all other banking factors and in this case we were unable to reach a favorable conclusion as to the need factor. The record reflects that this market area is now served by the Peoples Bank with deposits of $7.2MM, The Bank of Hartsville with deposits of $12.8MM, The First Federal Savings and Loan Association with deposits of $5.4MM, The Mutual Savings and Loan Association with deposits of $8.2MM and the Sonoco Employees Credit Union with deposits of $6.5MM. The aforementioned are as of December 31, 1968.

> It was a difficult case and you and your associates certainly presented your side of the case with fairness and diligence. We are unable to find any basis to change the decision as rendered. All we can say to you is that we did give this matter the most meticulous consideration and reached a conclusion contrary to what you had sought.

From these statements and the record before the court, it appears that the basis of the decision of the Comptroller was his unfavorable conclusion in regard to items 2 and 3 listed in the regulation set forth above.[3]

It is plaintiffs' contention that *need* of the new banking facility is not proper consideration of the Comptroller in issuing certificates to new banks. They argue that the vast majority of judicial authority is on the subject of establishing branch banks. 21 U.S.C. § 36, which section sets forth the law on that subject, provides that all factors relevant to the establishment of state branch banks must be considered by the Comptroller. The laws of the State of South Carolina and many other states specify that the needs of the community shall be considered in establishing branch banks. Therefore, with regard to branch banks, need must be considered by the Comptroller.

Plaintiffs argue that 12 U.S.C. §§ 21–27, which sections control the establishment of new national banks, make no mention of state regulations or of need. Rather 12 U.S.C. § 26 provides:

> Comptroller to determine if association can commence business.

> Whenever a certificate is transmitted to the Comptroller of the Currency, as provided in this chapter, and the association transmitting the same notifies the comptroller that at least 50 per centum of its capital stock has been duly paid in, and that such association has complied with all the provisions of this chapter required to be complied with before an association shall be authorized to commence the business of banking, the comptroller shall examine into the condition of such association, ascertain especially the amount of money paid in on account of its capital, the name and place of residence of each of its directors, and the amount of the capital stock of which each is the owner in good

---

3. The court notes that the defendant set forth further grounds in his affidavit, and, considering the affidavit of plaintiffs' representative submitted in this action, can understand plaintiffs' dismay at the additional grounds stated in the defendant's affidavit. The court is of the opinion that, if there is sufficient basis for the defendant's denial of the certificate on the originally stated ground, the additional facts stated in the allegedly "canned" affidavit can neither benefit nor harm plaintiffs.

faith, and generally whether such association has complied with all the provisions of this chapter required to entitle it to engage in the business of banking; and shall cause to be made and attested by the oaths of a majority of the directors, and by the president or cashier of the association, a statement of all the facts necessary to enable the comptroller to determine whether the association is lawfully entitled to commence the business of banking.

12 U.S.C. § 27 provides:

Certificate of authority to commence banking

If, upon a careful examination of the facts so reported, and of any other facts which may come to the knowledge of the comptroller, whether by means of a special commission appointed by him for the purpose of inquiring into the condition of such association, or otherwise, it appears that such association is lawfully entitled to commence the business of banking, the comptroller shall give to such association a certificate, under his hand and official seal, that such association has complied with all the provisions required to be complied with before commencing the business of banking, and that such association is authorized to commence such business. But the comptroller may withhold from an association his certificate authorizing the commencement of business, whenever he has reason to suppose that the shareholders have formed the same for any other than the legitimate objects contemplated by this chapter.

The court has difficulty in seeing language in those sections giving the Comptroller discretion in granting the certificate if the specific requirements of the act are met. The plaintiffs cite one case in a district court which may be authority for their argument. (Olsen v. Camp, 328 F.Supp. 728 (E.D.Mich. Jan. 1970)).

The statutory language, which the defendant contends makes the need of the new bank a proper consideration and commits the determination of that need to the Comptroller's discretion, does not impress the court. However, the court is impressed with the long and continued practice of the Comptroller of considering the need of the community. It is impressed with the necessity of that consideration if national banks are to be so regulated as to minimize bank failures with their accompanying effects on the total community. It is also impressed with the fact that the weight of authority accepts the consideration by the Comptroller of the need factor without question. In Sterling National Bank of Davie v. Camp, 431 F.2d 514, 516 (5th Cir. 1970), the court stated:

It has always been recognized that this legislation (speaking of the above quoted section) confers vast discretion on the Comptroller to approve or disapprove a new charter application.

Therefore, this court concludes that the need of the community for the new bank is a factor to be considered by the Comptroller on an application for a certificate for a new bank. In his determination of that question he must exercise his expertise and discretion.

Having reached the above set forth conclusions regarding plaintiffs' arguments, there remains only the question of whether plaintiffs are entitled to summary judgment on the administrative record before the court. The Court of Appeals for the Fourth Circuit, on its last occasion to express itself regarding the scope of review on appeals from determinations of the Comptroller, stated: "We conclude that the scope of review should not be more rigorous than the substantial evidence rule." First-Citizens Bank & Trust Co. v. Camp, 409 F.2d 1086, 1095 (4th Cir. 1969).

Although acknowledging that plaintiffs presented a convincing case in favor of the establishment of their bank, the court cannot say that the conclusion of the Comptroller is not adequately supported under the substantial evidence rule. The two examiners who

conducted field investigations, the Chief Examiner of the South Carolina Bank Control Board, and the first vice-president of the Federal Reserve Bank in Richmond all recommended that the application be denied. The statistics submitted on existent banking facilities in the area and the economic growth of the area are subject both to the interpretation given by the plaintiffs and to that of defendant. The court does not think more detailed discussion of the quite lengthy record would be constructive. It is of the opinion, after reading from the record, that although the Comptroller may have erred, there is substantial basis for his determination, and that it was neither capricious nor arbitrary.

Therefore, summary judgment must be entered for the defendant.

And it is so ordered.