Balaji DORAISWAMY, Appellant,

v.

SECRETARY OF LABOR.

HONEYWELL INFORMATION SYS-
TEMS, INC., et al., Appellants,

v.

The SECRETARY OF LABOR.

Nos. 74–1847, 74–2017.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 5, 1975.

Decided Nov. 26, 1976.

As amended Nov. 30, 1976.

Rehearing Denied Dec. 29, 1976.

Jack Wasserman, Washington, D.C., with whom Mark A. Mancini, Washington, D.C., was on the briefs, for appellants.

Richard I. Chaifetz, Atty., Dept. of Justice, Washington, D.C., with whom John L. Murphy, Chief, Government Regulation Section, Dept. of Justice, Washington, D.C., was on the brief, for appellee.

Before TAMM, ROBINSON and Mac-KINNON, Circuit Judges.

Opinion for the Court filed by Circuit Judge SPOTTSWOOD W. ROBINSON, III.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Section 212(a)(14) of the Immigration and Nationality Act bars aliens from entering the United States to perform labor unless the Secretary of Labor certifies that qualified American workers are not available therefor, and that wages and working conditions of similarly employed American workers will not be adversely affected.[1] These consolidated appeals are from summary judgments of the District Court upholding the Secretary's denial of certifications [2] separately sought by two aliens.[3]

---

1. The section reads:

 Sec. 212. (a) Except as otherwise provided in this [Act], the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:

 . . . . .

 (14) Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and to the Attorney General that (A) there are not sufficient workers in the United States who are able, willing, qualified, and available at the time of application for a visa and admission to the United States and at the place to which the alien is destined to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed.

Act of June 27, 1952, ch. 477, tit. II, ch. 2, § 212(a)(14), 66 Stat. 182, as amended, 8 U.S.C. § 1182(a)(14) (1970).

2. The powers conferred upon, and the duties assigned to, the Secretary by § 212(a)(14) have been delegated to personnel within the Manpower Administration of the Department of Labor. With exceptions not material to these cases, an application for alien certification is initially passed on by a certifying officer in the geographical area wherein the employment is to occur, 29 C.F.R. § 60.4(a) (1976), and any denial of certification by the certifying officer is reviewable by the Assistant Regional Director for that area or his designated representative, whose determination is declared to be final. Id. § 60.4(c).

3. *Doraiswamy v. Secretary of Labor,* Civ. No. 74–37 (D.D.C. June 7, 1974) (unreported), Doraiswamy Appendix (D.App.) 15 *et seq.;*

Upon examination of the administrative records[4] in light of the statute as we have heretofore interpreted it,[5] we affirm.

## I

Appellant Balaji Doraiswamy, a native and citizen of India, entered the United States as a student in 1970 and over the next two years earned the degree of master of business administration.[6] Although his visa did not permit employment in the United States, he was hired in 1972 as a junior contract auditor by the National Railroad Passenger Corporation (AMTRAK) in Washington, D.C. A year later, Doraiswamy applied for a labor certification pursuant to Section 212(a)(14). His application was supported by AMTRAK's offer of a post as traveling contract auditor,[7] the minimum requirement for which was stated to be a bachelor of science degree in account-

ing or finance.[8] The application was denied on the ground that "[a]vailable job market information will not warrant a certification of unavailability of workers in the U.S."[9]

AMTRAK then amended the job requirements to include a year's experience and, in Doraiswamy's behalf, sought reconsideration. The request was accompanied by copies of newspaper advertisements of the position in six cities, and emphasized the difficulty posed by the need to travel.[10] The earlier decision to deny the application was affirmed with the explanation that

> the . . . application was [previously] disapproved . . . because resident workers were available for employment as auditors in the local area. We must conclude, after reviewing your correspondence that these workers (in excess of 40 registered with the Division of Placement of the D.C. Manpower Admin-

---

*Honeywell Information Syss., Inc. v. The Secretary of Labor,* Civ. No. 481–73 (D.D.C. Aug. 27, 1974 (unreported), Honeywell Appendix (H.App.) 3 *et seq.*

4. Because, as subsequently discussed, judicial review of the Secretary's action under § 212(a)(14) is limited to scrutiny of the administrative record, Part III *infra,* the factual information incorporated herein, except as otherwise stated, is drawn exclusively from the records developed administratively in the proceedings now before us. The administrative record in No. 74–1847, *Doraiswamy v. Secretary of Labor,* is hereinafter cited "D.A.R.," and the administrative record in No. 74–2017, *Honeywell Information Syss., Inc. v. The Secretary of Labor,* is cited "H.A.R."

5. See *Pesikoff v. Secretary of Labor,* 163 U.S. App.D.C. 197, 501 F.2d 757, *cert. denied,* 419 U.S. 1038, 95 S.Ct. 525, 42 L.Ed.2d 315 (1974); *Acupuncture Center v. Dunlop,* 543 F.2d 852 (D.C.Cir. 1976), *cert. denied,* 429 U.S. 818, 97 S.Ct. 62, 50 L.Ed.2d 78 (1976).

6. Doraiswamy had previously earned degrees of bachelor of science and master of science in physics in his homeland.

7. The duties of the position were described thusly:

> Analyzes specific accounts, including examination of supporting evidence, mathematical verification, and scheduling of relevant data for analysis. Works closely with railroad personnel. Provides administrative assistance to supervisors. Extensive travel is required.

D.A.R. 22.

8. We note that Doraiswamy held neither of these degrees. The bachelor of science and master of science degrees awarded in India were in the field of physics and, as stated, his American degree was master of business administration.

9. D.A.R. 7. Files of the District of Columbia Manpower Administration, see note 2 *supra,* "indicate[d] 100 + Accountants available (same training as auditor)." D.A.R. 12.

10. The request stated:

> I recognize that auditors are generally available. It should be noted, however, that the job involved here requires extensive traveling, as the auditing involved must be performed at the various locations and routes of the railroad. In fact, the present duties performed by Mr. Doraiswamy requires him to travel almost five days a week.
>
> The average married man and even many single individuals are unwilling to undertake a job which requires the traveling involved in the instant job offer. It is for this reason it is [sic] submitted that the employer is unable, and will continue to be unable to find available domestic labor. The traveling involved in the instant job has resulted in a continual turnover of personnel and will continue to do so as long as most people prefer to go home rather than to a hotel at the end of a work day.

D.A.R. 5.

istration) [11] remain available for the position offered. A review of the application forms on file in this occupation with the Employment Service reveals that the vast majority of these individuals forsees [*sic*] the necessary qualifications to perform the job offered. There is no indication that these workers have placed travel restrictions on their employment. In the absence of such restrictions we must assume that these registrants have no objection to travel on the job and hence are willing and available, as well as qualified, for the employment opportunity described in the application.[12]

With that, Doraiswamy came to the District Court for judicial review. His complaint alleged that AMTRAK was unable to recruit qualified contract auditors amendable to extensive travel, and that the contrary administrative conclusion rested on inadequate investigation. The Secretary moved for summary judgment on the administrative record, and Doraiswamy sought unsuccessfully to take the depositions of two administrative officials and to inspect and copy certain documents.[13]

The District Court awarded summary judgment in favor of the Secretary.[14] The court referred to the general availability of contract auditors:

> When the D.C. Manpower Administration received Doraiswamy's application and supporting data, it consulted its files and determined that it, the Manpower Administration, had files on over 100 persons in the D.C. area who had, at that time, the requisite qualifications and willingness for AMTRAK employment.[15]

The court also addressed the travel factor:

> When the Manpower Administration reviewing officer reconsidered the certification application as amended, he determined that more than 40 persons were available for this position. He specifically found, with respect to the travel factor asserted by [Doraiswamy's] counsel, that there was no indication from the file that any of these 40 persons had placed any travel restrictions on his availability for employment.[16]

Declaring "that 'abuse of discretion may be found only if there is no evidence to support the decision' "[17] and that "the 'burden should be placed on the alien or his putative employer to prove that it is not possible for the employer to find a qualified American worker,' "[18] the court concluded that Doraiswamy "has failed to submit any data to support his conclusions. He has not carried his burden of proof."[19]

## II

Appellant Kenneth What Poont Lao is a native of Burma and a citizen of the Republic of China. Having entered the United States as a student in 1967, he earned the degrees of bachelor of arts in mathematics in 1969 and master of science in the technology of management in 1971. Soon thereafter, in disregard of his immigration status, he became a systems analyst for appellee Honeywell Information Systems, Inc., a manufacturer-marketer of computers and related products and services. Somewhat later, Lao submitted an application for a Section 212(a)(14) certification, and bolstered it with an offer by Honeywell of a job as systems analyst in the Washington metropolitan area. The application was denied on the ground that qualified Americans were available for the position, and on

---

11. See note 2 *supra*.

12. D.A.R. 1.

13. The Secretary did, however, respond to Doraiswamy's request for admissions because it inquired into agency procedures.

14. *Doraiswamy v. Secretary of Labor, supra* note 3.

15. *Id.,* D.App. 18.

16. *Id.,* D.App. 18.

17. *Id.,* D.App. 19, quoting *Song Jook Suh v. Rosenberg,* 437 F.2d 1098, 1102 (9th Cir. 1971).

18. *Id.,* D.App. 19, quoting *Pesikoff v. Secretary of Labor, supra* note 5, 163 U.S.App.D.C. at 201, 501 F.2d at 761.

19. *Id.,* D.App. 19.

reconsideration this disposition was affirmed.[20]

Shortly thereafter, Lao filed a second application for a labor certification, together with a similar job offer from Honeywell. Stated as minimum requirements for the position were "[t]raining in one or more [computer] programming languages and a reasonable degree of proficiency," [21] and "[o]ne year of programming experience." [22] Honeywell also specified as "[n]ormal [q]ualifications" that the applicant must possess a "[c]ollege degree or equivalent plus 1 year of programming experience and specific knowledge in at least one computer programming method." [23] This application met the same fate as the first, for the same reason.

Honeywell sought reconsideration, stating that the job offered Lao necessitated a minimum of a year's experience with its 6000 series computer systems. Honeywell asserted that Lao had acquired that experience during his employment, and that it had not been able to find anyone else who was experience-qualified. The denial of this application was affirmed:

> The Professional Career Information Branch of the D.C. Manpower Administration has numerous qualified applicants listed in their files who are available for employment, and this is just one of the many recruitment sources available to employers in the Washington Metropolitan Area. These workers possess the basic education, training and experience in systems analysis normally required for proficiency in this occupation. In view of the available manpower to fill this position, the specific requirement of experience on 6000 series computers must be regarded as training which is normally required [sic] on the job.[24]

Five months later Lao, again with Honeywell's support, submitted his third and final application for certification. Honeywell designated as minimum job requirements a bachelor's degree in mathematics, "[t]raining in one or more programming languages and a reasonable degree of proficiency," [25] and "[o]ne year of programming experience." [26] Honeywell professed its willingness to hire an available domestic worker, and stated that the position had been advertised in Washington newspapers without satisfactory results. This application, like its forerunners, was denied for the reason consistently advanced earlier. An intra-agency memorandum noted that despite Honeywell's alleged difficulty in recruiting systems analysts with 6000 series computer systems experience, Lao did not have that experience when originally hired, and was no better qualified than any of numerous systems analysts available.[27]

As on previous occasions, Honeywell submitted a request for reconsideration based "on the fact that [Lao] has gained considerable experience over the past year while working on our Honeywell 6000 computer systems and the fact that there is a decided lack of available qualified 6000 Systems An-

---

**20.** The first application and the administrative proceedings thereon are not included in the administrative record. The recitals concerning them which we set forth in text appear in the Secretary's brief, however, and are tacitly admitted by appellants Honeywell and Lao.

**21.** H.A.R. 2–8.

**22.** H.A.R. 2–8.

**23.** H.A.R. 2–9.

**24.** H.A.R. 2–2.

**25.** H.A.R. 1–19.

**26.** H.A.R. 1–19.

**27.** "Employer has indicated difficulty in recruiting systems analysts with specific experience on Honeywell 6000 and has submitted present application. Alien's A form indicates he was trained by Honeywell upon completion of studies at American University. He has no previous experience on Honeywell equipment. Company Bulletin dated February 1, 1972 (included among exhibits) shows schedule of training given to systems reps without previous experience to be approximately 3 weeks prior to commencing OJT (lasting 8 to 12 months). Such training is normal for systems analysts. Therefore, the more than 25 available systems analysts are qualified to perform the duties of job offer." H.A.R. 1–12.

alysts."[28] Honeywell represented that it had placed recruitment advertisements in newspapers and had listed openings with federal, state and private employment services without satisfying its need for analysts with Honeywell 6000 computer systems experience. The application for certification was again rejected on the ground that American workers were available for the position:

> The . . . application was disapproved . . . because there were resident workers available in the occupation of systems analyst. This occupation is included among those classified as Professions, Sciences or Arts. In making a determination, the requirements indicated on the job offer were not considered. The initial determination was based only on the availability of and adverse effect on resident workers in the occupation.
>
> . . .

A careful review of the material submitted indicates that the alien has received only 19 days of formal training other than on the job experience gained with your firm. A more recent check . . . with the Professional Career Information Branch of the D.C. Manpower Administration revealed there are in excess of 150 persons qualified in computer systems available and in fact seeking employment.[29]

An action, with Honeywell and Lao as plaintiffs, was then instituted in the District Court for review of the action taken on the third application. The complaint reiterated the claim that available systems analysts lacked the ability and experience to perform the duties of the position offered Lao. The Secretary moved for summary judgment, and the plaintiffs sought and obtained limited discovery.[30] The

28. H.A.R. 1–5.

29. H.A.R. 1–1, 1–2. An intra-agency memorandum more elaborately explained:

At the present time, there are in excess of 100 applicants possessing the basic education, training and experience normally required for entry level into the occupation of systems analysts who are registered for employment with the D.C. Manpower Administration. In a recent meeting following the second review denial the employer stated alternative job requirements which would be acceptable to the company in lieu of experience on the 6000 series. The alternate requirements also restrict consideration of normally qualified and available systems analysts who are eligible to receive Honeywell Training on the 6000 series computer. A job order with these requirements was placed on the Washington Metropolitan Area Job Bank at the employer's request. However, although applicants possessing the specialized background specified by the employer are available on a less general basic [sic], there is a lack of interest because of the employer's salary offer of $920 per month. The majority of individuals possessing the skills required by the employer are commanding salaries ranging from $18,000 to $25,000 per year.

In summary, our position in the Honeywell case and in similar applications submitted by Washington Metropolitan Area employers in [sic] that there are sufficient resident workers available in the local area who possess the basic education, training and experience normally required for entry level into the occupation of systems analyst and that famil-

iarity or experience with an individual employer's specific type of equipment can only be acquired on the job and that on-the-job training on company equipment is normal for the occupation. Contacts with several of the larger computer firms in the Metropolitan area, such as Univac, McDonnell Douglas and Control Data Corporation have revealed that starting systems analysts must possess a college degree or equivalent, knowledge of at least one programming language and a minimum of 1 to 3 years programming experience. On-the-job training on company equipment is normal and is provided by the company to individuals possessing the basic educational and experience requirements. The average length of such training does not exceed 3 to 6 month [sic] duration.

It is our contention that the job offer is not unique but rather an entry position and that the alien in no way possesses exceptional abilities; therefore, we had no basis for granting certification in view of the availability of resident workers.

Supplement to H.A.R., appended to affidavit filed in the District Court May 21, 1973 (R.5).

30. The plaintiffs noticed the taking of depositions of Departments of Labor personnel, called for production of documents and requested admissions. One witness was deposed with respect to the procedures followed in processing labor certification applications, and the request for admissions was answered. The Secretary was permitted to supplement the administrative record with applications and resumes of

court, restricting its consideration to the administrative record, granted the Secretary's motion.[31] In the court's view,

> [i]t is not an abuse of the Secretary's discretion to ignore the job specifications offered by the prospective employer, if through his expertise in the labor market, he deems those requirements to be inappropriate to the job to be performed. Thus, the Secretary's decision that experience on the Honeywell 6000 series computer system was unnecessary to an entry level computer position is affirmed.[32]

The court was further of the view that

> [t]he legislative history of the Act clearly demonstrates that the Secretary need only survey the labor market, and if a pool of potential workers is available to perform the job, then the onus shifts to the alien or his prospective employer to prove that no qualified American workers are available. Absent such proof by the alien, the Secretary has no choice but to deny a labor certificate.[33]

The court concluded:

> Therefore, the Secretary's finding in this case that a pool of computer workers [was] available and absent any proof by the plaintiff [sic] to the contrary, that finding is affirmed. Plaintiff's [sic] contention that the Secretary must provide

resumes of job applicants in order for plaintiff [sic] to test the Secretary's conclusions is without merit . . ..[34]

## III

We first consider appellants' common contention that the District Court erroneously denied them the opportunity of proving the unavailability of qualified American workers to fill the position openings in question. As we have stated, appellants endeavored unsuccessfully to achieve that end through discovery from the Secretary.[35] In the one case, however, the District Court limited the effort at the threshold,[36] in the other it deemed the effort to be "without merit,[37] and in neither did it venture beyond the administrative record.[38] We conclude that in each instance the District Court was eminently correct in restricting its review to the record as made before the Secretary.

As the Supreme Court has observed, "in cases where Congress has simply provided for review, without setting forth the standards to be used or the procedures to be followed, [the] Court has held that consideration is to be confined to the administrative record and that no *de novo* proceeding may be held." [39] This circum-

---

available systems analysts—with names and addresses largely deleted to preserve anonymity—but the plaintiffs persisted in their endeavor to inspect documents and depose additional witnesses. The Secretary responded with a motion for a protective order, which plaintiffs opposed. That was the status of discovery when the District Court, wholly on the administrative record, gave summary judgment for the Secretary.

**31.** *Honeywell Information Syss., Inc. v. Secretary of Labor, supra* note 3.

**32.** *Id.,* H.App. 6.

**33.** *Id.,* H.App. 6.

**34.** *Id.,* H.App. 6–7.

**35.** See notes 13, 30 *supra* and accompanying text.

**36.** See note 13 *supra* and accompanying text.

**37.** See text *supra* at note 34.

**38.** See text *supra* at notes 15–19, 31–34.

**39.** *United States v. Carlo Bianchi & Co.,* 373 U.S. 709, 715, 83 S.Ct. 1409, 1413, 10 L.Ed.2d 652, 657 (1963). See also cases cited *infra* note 40. 5 U.S.C. § 706(2)(F) (1970) directs the reviewing court to "hold unlawful and set aside agency action . . . found to be . . . unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court." De novo review is authorized only in two instances: "when the action is adjudicatory in nature and the agency factfinding procedures are inadequate," or "when issues that were not before the agency are raised in a proceeding to enforce nonadjudicatory agency action." *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136, 153 (1971). See also *Camp v. Pitts,* 411 U.S. 138, 141, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106, 111 (1973). Neither situation is presented here. No infirmity in the Secretary's factfinding procedures is claimed; the contention in both cases, rather, is that the Secretary

scription, which the Court has consistently honored in other cases,[40] stems from well ingrained characteristics of the administrative process. The administrative function is statutorily committed to the agency, not the judiciary. A reviewing court is not to supplant the agency on the administrative aspects of the litigation.[41] Rather, the judicial function is fundamentally—and exclusively—an inquiry into the legality and reasonableness of the agency's action,[42] matters to be determined solely on the basis upon which the action was administratively projected. "The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based," [43] and the reviewing court cannot "supply an alternative, unstated ground to support an agency's decision if that ground is one that 'the agency alone is authorized to make.' " [44] To permit an ad-

ministrative determination "to be attacked or supported in court by new evidence," the Supreme Court has admonished, "would substitute the court the administrative tribunal . . .." [45]

■ The rule confining judicial review of agency action to the administrative record applies not only to proceedings involving formal evidentiary-type hearings but also to informal agency adjudication on a nonevidentiary record. In *Citizens to Preserve Overton Park v. Volpe,*[46] the Secretary of Transportation rendered a decision following a statutorily-required public hearing designed to afford community imput on the matters to be determined [47]—a hearing "nonevidentiary, quasi-legislative in nature," [48] necessitating no formal findings of fact.[49] On review in a district court, the parties introduced opposing affidavits ad-

applied erroneous legal standards and reached erroneous conclusions. And it goes without saying that appellants did not come into the District Court for enforcement of the Secretary's decision.

**40.** *Camp v. Pitts, supra* note 39, 411 U.S. at 141–143, 93 S.Ct. at 1244, 36 L.Ed.2d at 112–113; *Citizens to Preserve Overton Park v. Volpe, supra* note 39, 401 U.S. at 415, 420, 91 S.Ct. at 825–826, 28 L.Ed.2d at 155; *National Broadcasting Co. v. United States,* 319 U.S. 190, 227, 63 S.Ct. 997, 1014, 87 L.Ed. 1344, 1368 (1943); *Acker v. United States,* 298 U.S. 426, 433–434, 56 S.Ct. 824, 828–829, 80 L.Ed. 1257, 1263 (1936); *Tagg Bros. & Moorhead v. United States,* 280 U.S. 420, 443–445, 50 S.Ct. 220, 226–227, 74 L.Ed. 524, 536–537 (1930). See also *Rodway v. United States Dep't of Agriculture,* 168 U.S.App.D.C. 387, 394, 514 F.2d 809, 816 (1975). Compare *Cincinnati N. O. & T. P. Ry. v. ICC,* 162 U.S. 184, 196, 16 S.Ct. 700, 705, 40 L.Ed. 935, 939 (1896).

**41.** *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447, 456 (1974); *Citizens to Preserve Overton Park v. Volpe, supra* note 39, 401 U.S. at 416, 91 S.Ct. at 824, 28 L.Ed.2d at 153.

**42.** See B. Schwartz, Administrative Law §§ 211, 215 (1966).

**43.** *SEC v. Chenery Corp.,* 318 U.S. 80, 87, 63 S.Ct. 454, 459, 87 L.Ed. 626, 633 (1943).

**44.** *Gulf States Utils. Co. v. FPC,* 411 U.S. 747, 764, 93 S.Ct. 1870, 1880, 36 L.Ed.2d 635, 647 (1973), quoting *SEC v. Chenery Corp., supra*

note 43, 318 U.S. at 88, 63 S.Ct. at 459, 87 L.Ed. at 633. See also *Citizens to Preserve Overton Park v. Volpe, supra* note 39, 401 U.S. at 418, 419, 91 S.Ct. at 824–825, 28 L.Ed.2d at 155; *Burlington Truck Lines v. United States,* 371 U.S. 156, 168–169, 83 S.Ct. 239, 245–246, 9 L.Ed.2d 207, 216 (1962); *Rodway v. United States Dep't of Agriculture, supra* note 40, 168 U.S.App.D.C. at 394, 514 F.2d at 816.

**45.** *Tagg Bros. & Moorhead v. United States, supra* note 40, 280 U.S. at 444, 50 S.Ct. at 220, 74 L.Ed. at 537.

**46.** *Supra* note 39.

**47.** Under the statutory scheme, the Secretary could not allocate federal funds to any project —there, construction of a highway—involving the use of public parkland unless there was no feasible and prudent alternative, and unless there was all possible planning to minimize harm to the park. 401 U.S. at 414–415, 91 S.Ct. at 822–823, 28 L.Ed.2d at 150.

**48.** *Id.* at 415, 91 S.Ct. at 823, 28 L.Ed.2d at 152. "The hearing 'is meant to be a "town hall" type meeting . . .' [not] a quasi-judicial or adversary legal type hearing." *Lathan v. Brinegar,* 506 F.2d 677, 691 (9th Cir. 1974), citing H.R.Rep. No. 91–1554, 91st Cong., 2d Sess. 6 (1970), U.S.Code Cong. & Admin.News 1970, pp. 5392, 5396.

**49.** *Citizens to Preserve Overton Park v. Volpe, supra* note 39, 401 U.S. at 417–419, 91 S.Ct. at 824–825, 28 L.Ed.2d at 152.

dressing the validity of the decision, and the affidavits served as the foundation for judicial scrutiny.[50] The Supreme Court held that de novo consideration was not authorized,[51] and that "[t]hese affidavits were merely '*post hoc* rationalizations' [52] . . which have traditionally been found to be an inadequate basis for review [53] . . .. [T]hey clearly do not constitute the 'whole record' compiled by the agency: the basis for review required by § 706 of the [Administrative Procedure Act]." [54] Review is rather "to be based," the Court said, "on the full administrative record that was before the Secretary at the time he made his decision." [55]

Two years later, the Court reinforced the doctrine that judicial review of informal agency adjudication is to be conducted solely on the administrative record. In *Camp v. Pitts*,[56] the Comptroller of the Currency, proceeding under a statute which did not require a formal hearing,[57] refused to issue a certificate authorizing the organization of a new bank. That action came under review in a district court which, on examination of the record before the Comptroller,[58] held that de novo review was not warranted [59] and, viewing only the administrative record, sustained the Comptroller's ruling.[60] On intermediate appeal,[61] however, it was felt that the basis of the Comptroller's decision was too obscure to enable adequate review and a remand was ordered "for a trial *de novo* before the District Court," [62] at which evidence pro and con would be introduced, and after which the court would determine "by a preponderance of evidence [whether] the Comptroller's ruling is capricious or an abuse of discretion." [63] This, the Supreme Court held, was error.[64] "The appropriate standard of review," the Court declared, "was . . . whether the Comptroller's adjudication was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' " [65] and "[i]n applying that standard, the focal point for judicial review

**50.** *Id.* at 409, 91 S.Ct. at 820, 28 L.Ed.2d at 149. As here, one side also wanted to depose an administrative official who had participated in the decision. *Id.*

**51.** *Id.* at 415, 91 S.Ct. at 823, 28 L.Ed.2d at 152–153.

**52.** *Id.* at 419, 91 S.Ct. at 825, 28 L.Ed.2d at 155, quoting *Burlington Truck Lines v. United States, supra* note 44, 371 U.S. at 168, 83 S.Ct. at 246, 9 L.Ed.2d at 216.

**53.** *Citizens to Preserve Overton Park v. Volpe, supra* note 39, 401 U.S. at 419, 91 S.Ct. at 825, 28 L.Ed.2d at 155, citing *Burlington Truck Lines v. United States, supra* note 44; *SEC v. Chenery Corp., supra* note 43, 318 U.S. at 87, 63 S.Ct. at 459, 87 L.Ed. at 633.

**54.** *Citizens to Preserve Overton Park v. Volpe, supra* note 39, 401 U.S. at 419, 91 S.Ct. at 825, 28 L.Ed.2d at 155. 5 U.S.C. § 706 (1970), referred to by the Court, provides that the reviewing court "shall review the whole record or those parts of its cited by a party . . . .."

**55.** *Citizens to Preserve Overton Park v. Volpe, supra* note 39, 401 U.S. at 420, 91 S.Ct. at 825, 28 L.Ed.2d at 155. See also text *infra* at notes 72–76.

**56.** *Supra* note 39.

**57.** There was, however, an administrative regulation providing for a hearing, at the Comptrol-

ler's discretion, upon request, but the appellants did not seek a formal hearing. 419 U.S. at 139, 93 S.Ct. at 1242, 36 L.Ed.2d at 109.

**58.** The Comptroller originally denied the applications on the basis of information received from a national bank examiner and interested parties. On reconsideration, the results of a supplemental field examination became available. *Id.* at 138–139, 93 S.Ct. at 1242, 36 L.Ed.2d at 109.

**59.** *Pitts v. Camp,* 329 F.Supp. 1302, 1305 (D.S. C.1971). The appellants had undertaken discovery, *id.* at 1303, which the court ruled out. *Id.* at 1305.

**60.** *Id.* at 1305–1308.

**61.** *Pitts v. Camp,* 463 F.2d 632 (4th Cir. 1972).

**62.** *Camp v. Pitts, supra* note 39, 411 U.S. at 140, 93 S.Ct. at 1243, 36 L.Ed.2d at 110, quoting *Pitts v. Camp, supra* note 61, 463 F.2d at 634.

**63.** *Camp v. Pitts, supra* note 39, 411 U.S. at 139, 93 S.Ct. at 1243, 36 L.Ed.2d at 110, quoting *Pitts v. Camp, supra* note 61, 463 F.2d at 634.

**64.** *Camp v. Pitts, supra* note 39, 411 U.S. at 140, 93 S.Ct. at 1243, 36 L.Ed.2d at 110–111.

**65.** 411 U.S. at 142, 93 S.Ct. at 1244, 36 L.Ed.2d at 111, quoting 5 U.S.C. § 706(2)(A) (1970).

should be the administrative record already in existence, not some new record made initially in the reviewing court." [66]

In the cases at bar, however, it is asserted that without discovery and an opportunity to demonstrate in the District Court the unavailability of American workers qualified for the positions sought to be filled, appellants faced a dilemma from which escape was a near impossibility. Attention is called to the District Court's view that it was their burden at the administrative level to make that showing,[67] and we are reminded that their recruitment efforts through newspaper advertisements and employment services did not satisfy the Secretary.[68] Beyond that, Honeywell tells us that it was unable to interview those whose resumes underlay the Secretary's conclusion on availability—in order to test that conclusion—because the Secretary would not release their names.[69] When the discovery efforts in the District Court came to naught, appellants complain, their last chance to carry their burden was taken away. We cannot agree that the discovery sought was the sole viable alternative left to appellants. It is abundantly clear that they could have amply tested the local labor market simply by filing job orders with the Employment Service of the Manpower Administration and interviewing applicants referred to them.[70] Neither prospective employer, however, sought to avail itself of this opportunity prior to completion of the administrative processes on the applications for certification.[71]

■ Appellants also point to the fact that the Supreme Court has left the door ajar for a call upon an administrative agency to more adequately explain, through affidavits or testimony in the reviewing court, the reasons for its decision.[72] Certainly, as the Court has held, there is occasion to do so when "the bare record [does] not disclose the factors that were considered or the Secretary's construction of the evidence, [and] it [is] necessary for the District Court to require some explanation in order to determine if the Secretary acted within the scope of his authority and if the Secretary's action was justifiable under the applicable standard." [73] But in the cases before us, appellants challenge the correctness of the Secretary's decisions rather than the fullness of the reasons he gave,[74] and surely there is no such "failure to explain administrative action as to frustrate effective judicial review." [75] As the Court has made plain, there is no occasion for a judicial probe beyond the confines of an administrative record affording enough "contemporaneous explanation of the administrative decision" to "indicate[ ] the determinative

**66.** 411 U.S. at 142, 93 S.Ct. at 1244, 36 L.Ed.2d at 111. See also text *infra* at notes 72–76. And compare our holding in *Rodway v. United States Dep't of Agriculture, supra* note 40, 168 U.S.App.D.C. at 394, 514 F.2d at 816, that a reviewing court may not look beyond the administrative record to affidavits purportedly providing justification for administrative action.

**67.** See text *supra* at notes 18–19, 33.

**68.** See Parts I, II *supra.*

**69.** While the Secretary, upon receipt by the Employment Service of the job order, refers qualified available persons to the prospective employer for interviews, it is his policy not to make the resumes of job applicants on file available to anyone. R. 10, 13 at 6–8.

**70.** See note 69 *supra.*

**71.** Subsequently, however, both employers did resort to the Administration's applicant-referral

service. We do not consider these steps or the results since they postdate the administrative decisions.

**72.** See *Camp v. Pitts, supra* note 39, 411 U.S. at 142–143, 93 S.Ct. at 1244, 36 L.Ed.2d at 111; *Citizens to Preserve Overton Park v. Volpe, supra* note 39, 401 U.S. at 420, 91 S.Ct. at 814, 28 L.Ed.2d at 825–826.

**73.** *Citizens to Preserve Overton Park v. Volpe, supra* note 39, 401 U.S. at 420, 91 S.Ct. at 825, 28 L.Ed.2d at 155.

**74.** The administrative decisions are invariably accompanied by an indication of the underlying reasons, which consistently are stated clearly and sometimes elaborately. See Parts I, II *supra.*

**75.** *Camp v. Pitts, supra* note 39, 411 U.S. at 142–143, 93 S.Ct. at 1244, 36 L.Ed.2d at 111.

reason for the final action taken." [76] That is the situation we encounter here.

## IV

We next reach Honeywell's contention that the final step in administrative processing of Lao's applications was taken by a delegate of the Secretary [77] who was disqualified from acting. [78] As we have said, Honeywell submitted three separate applications on Lao's behalf for certification pursuant to Section 212(a)(14). [79] The certifying officer who initially passed on the first two applications was Lorenzo M. White, whose denials of those applications were reconsidered and sustained by Fred Z. Hetzel as reviewing officer. [80] The certifying officer who similarly denied the third application was Flora Richardson, and White, who in the meantime had been promoted, was the reviewing officer who reconsidered that application and upheld Ms. Richardson's ruling. Honeywell's argument is that White's role as reviewing officer on the third application violated an administrative regulation providing that an official "who shall not have participated in the initial determination[ ] shall carry out the review," [81] and as well was a deprivation of due process of law.

Without a doubt, "an administrative agency is bound not only by the precepts of its governing statute but also by those incorporated into its own regulations . . . ." [82] And just as indubitably, a litigant's entitlement to a tribunal graced by an unbiased adjudicator [83] obtains in administrative proceedings. [84] Here we perceive no impingement upon these principles, however. The obvious purpose of the regulation is to bar an officer from reviewing his own decision, and the certifying and reviewing functions in regard to Lao's third application were performed by different officials. Each of the three applications inaugurated an independent proceeding; each review was directed exclusively toward the certifying officer's initial decision on a particular application. When White served as reviewing officer on the third application, the issue concerned Ms. Richardson's denial of that application and not White's rulings on the two prior applications.

We are unable to meaningfully distinguish this situation from that which occasionally arises under a statute forbidding federal judges from participating in appeals from their own decisions. [85] Speaking to the

76. *Id.* at 143, 93 S.Ct. at 1244, 36 L.Ed.2d at 111. "The validity of the Comptroller's action must, therefore, stand or fall on the propriety of [his] finding, judged, of course, by the appropriate standard of review. If that finding is not sustainable on the administrative record made, then the Comptroller's decision must be vacated and the matter remanded to him for further consideration. . . . It is in this context that the Court of Appeals shall determine whether and to what extent, in the light of the administrative record, further explanation is necessary to a proper assessment of the agency's decision." *Id.*

77. See note 2 *supra.*

78. No similar problem arises on Doraiswamy's appeal.

79. See Part II *supra.*

80. Appellants have limited the present review, in Honeywell's case, to the administrative action on the third application.

81. "The Regional Manpower Administrator (or the Administrator for the District of Columbia) or his designated representative, who shall not

have participated in the initial determination, shall carry out the review." 29 C.F.R. § 60.4(c) (1973).

82. *Nader v. Nuclear Regulatory Comm'n,* 168 U.S.App.D.C. 255, 261, 513 F.2d 1045, 1051 (1975), citing *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); *Vitarelli v. Seaton,* 359 U.S. 535, 539, 79 S.Ct. 968, 972, 3 L.Ed.2d 1012, 1016–1017 (1959).

83. *E.g., Johnson v. Mississippi,* 403 U.S. 212, 216, 91 S.Ct. 1778, 1780, 29 L.Ed.2d 423, 427 (1971); *Mayberry v. Pennsylvania,* 400 U.S. 455, 462–466, 91 S.Ct. 499, 503–504, 27 L.Ed.2d 532, 538–540 (1971).

84. *E.g., Amos Treat & Co. v. SEC,* 113 U.S.App.D.C. 100, 103–107, 306 F.2d 260, 263–267 (1962). See also *Ohio Bell Tel. Co. v. Public Utils. Comm'n,* 301 U.S. 292, 300–307, 57 S.Ct. 724, 728–730, 81 L.Ed. 1093, 1099–1103 (1937).

85. "No judge shall hear or determine an appeal from the decision of a case or issue tried by him." 28 U.S.C. § 47 (1970).

scope of an earlier but substantially similar version of the current statutory prohibition,[86] the Supreme Court has declared that

> [t]he terms of the statute . . . are both direct and comprehensive. Its manifest purpose is to require that the Circuit Court of Appeals be composed in every hearing of judges none of whom will be in the attitude of passing upon the propriety, scope or effect of any ruling of his own made in the progress of the cause in the court of first instance, and to this end the disqualification is made to arise, not only when the judge has tried or heard the whole cause in the court below, but also when he had tried or heard any question therein which it is the duty of the Circuit Court of Appeals to consider and pass upon .... [T]he sole criterion under the statute is, does the case in the Circuit Court of Appeals involve a question which the judge has tried or heard in the course of the proceedings in the court below?[87]

Accordingly, the Court has held that a judge is not disqualified from sitting as a member of the court of appeals reviewing a conviction involving no question previously considered by him in the district court, although he had overruled a motion to quash the indictment made by an ultimately untried codefendant of the appellant, and in another case, involving the same charge but not the appellant, had overruled a like mo-

tion and presided at the trial and sentencing of the defendant therein.[88]

Closer to the situation at hand is that which the Third Circuit has had occasion to address. A circuit judge was designated to preside at a criminal trial, at which the defendants were convicted but on appeal the convictions were reversed. The judge did not take part in the retrial but he did sit as a member of the court which heard and decided an appeal from convictions on the retrial. Since no action of the judge respecting the first trial was involved in the second appeal, it was held that his participation in the resolution of that appeal was appropriate.[89] Somewhat similarly, the Ninth Circuit has held that a district judge who dismissed one indictment against an accused did not disqualify him from sitting as a member of the court of appeals reviewing the accused's conviction on another indictment.[90] Likewise, the Third Circuit has also held that a circuit judge who, while sitting on special assignment in a district court, had granted a motion for enlargement of a defendant's time to plead, was not disqualified from participating in the plaintiff's appeal from an order refusing a motion for a preliminary injunction in the same case, since no question as to the extension of time was involved on the appeal.[91]

These precedents, we think, serve well to guide the decision now to be made. They

---

**86.** See *United States v. Emholt*, 105 U.S. 414, 415, 26 L.Ed. 1077, 1078 (1882); *William Cramp & Sons Ship & Engine Bldg. Co. v. International Curtis Marine Turbine Co.*, 228 U.S. 645, 649–650, 33 S.Ct. 722, 724, 57 L.Ed. 1003, 1009 (1913). At the time the statute provided that "no justice or judge before whom a cause or question may have been tried or heard in a district court, or existing circuit court, shall sit on the trial or hearing of such cause or question in the circuit court of appeals." Act of Mar. 3, 1891, ch. 517, § 3, 26 Stat. 826.

**87.** *Rexford v. Brunswick-Balke-Collender Co.*, 228 U.S. 339, 343–344, 33 S.Ct. 515, 517, 57 L.Ed. 864, 866 (1913). See also *Moran v. Dillingham*, 174 U.S. 153, 156–158, 19 S.Ct. 620, 621–622, 43 L.Ed. 930, 932 (1899).

**88.** *Delaney v. United States*, 263 U.S. 586, 588–589, 44 S.Ct. 206, 207, 68 L.Ed. 462, 464–465

(1924). See also *Chance v. United States*, 331 F.2d 473, 475–476 (5th Cir. 1964).

**89.** *United States v. Perlstein*, 126 F.2d 789, 806 (3d Cir.), *cert. denied*, 316 U.S. 678, 62 S.Ct. 1106, 86 L.Ed. 1752 (1942).

**90.** *Noah v. United States*, 316 F.2d 159, 160 (9th Cir.), *cert. denied*, 375 U.S. 855, 84 S.Ct. 115, 11 L.Ed.2d 82 (1963).

**91.** *Triangle Conduit & Cable Co. v. National Elec. Prods. Corp.*, 125 F.2d 1008, 1009–1010 (3d Cir.), *cert. denied*, 316 U.S. 676, 62 S.Ct. 1046, 86 L.Ed. 1750 (1942). See also *Lee v. United States*, 91 F.2d 326, 311–332 (5th Cir.), *cert. denied*, 302 U.S. 745, 58 S.Ct. 263, 82 L.Ed. 576 (1937).

teach that the statute works a disqualification of an appellate judge only when an appeal involves a question decided by the judge at the trial level. We think the Secretary's regulation, which seeks for administrators what the statute exacts for federal judges, should be given the same construction. While the three applications on Lao's behalf sought the same type of certification and the supporting arguments echoed a familiar theme, the central question on each application was the sufficiency of Honeywell's showing of the unavailability of American workers for the post that Lao wished to permanently fill. That demonstration varied factually, though unsuccessfully, as on each application Honeywell strove to improve it. White, as reviewing officer on the third application, thus faced no action which he took on either of the two prior applications. We hold that the regulation was not violated.

### V

Appellants' procedural objections thus resolved, we now direct our attention to their claims on the merits. The central theme of their arguments is that certifications to the effect that there was an insufficiency of American workers "able, willing, qualified, and available," [92] in the words of the Act, to fill their position openings were

legally required unless the Secretary mounted and succeeded in an affirmative showing to the contrary. This responsibility, so the contention runs, cannot be discharged merely by ascertaining that there are applicants for work of the same type and assuming that the applicants meet each of the four statutory criteria. This position mistakes the thrust of the statute, as interpreted in our recent *Pesikoff* [93] and *Acupuncture Center* [94] decisions, which is that the burden of demonstration rests not on the Secretary but on the applicant.

In *Acupuncture Center,* we summarized the governing principles:

Section 212(a)(14) . . . establishes a presumption against admission of aliens for the purpose of performing labor.[95] This presumption is triggered by the Secretary's consultation with general labor market data suggesting the availability of workers to perform the job which the alien seeks.[96] The burden is then cast on the alien or his would-be employer to show that no qualified domestic worker can be found.[97] A court may overturn the Secretary's determination only if it can be said that he abused his discretion in concluding as he did.[98]

After careful analysis and study of the administrative records, aided by post-argu-

**92.** See note 1 *supra.*

**93.** *Pesikoff v. Secretary of Labor, supra* note 5.

**94.** *Acupuncture Center v. Dunlop, supra* note 5.

**95.** "[T]he section is written so as to set up a presumption that aliens should not be permitted to enter the United States for the purpose of performing labor because of the likely harmful impact of their admission on American workers." *Pesikoff v. Secretary of Labor, supra* note 5, 163 U.S.App.D.C. at 201, 501 F.2d at 761.

**96.** "[T]he Secretary is not obligated to prove in the case of every alien seeking entry to perform labor that the [statutory] conditions are not met. Given the presumption of the statute against admission, if the Secretary's consultation of the general labor market data readily available to him suggests that there is a pool of potential workers available to perform the job

which the alien seeks, the burden should be placed on the alien or his putative employer to prove that it is not possible for the employer to find a qualified American worker." *Id.*

**97.** See note 96 *supra.*

**98.** *Acupuncture Center v. Dunlop, supra* note 5, 543 F.2d at 859 (footnotes omitted). "In order to reverse the Secretary's denial of certification," we must "find that the denial was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Pesikoff v. Secretary of Labor, supra* note 5, 163 U.S.App.D.C. at 201 n. 5, 501 F.2d at 761 n. 5. See Administrative Procedure Act, § 10(e)(2)(A), 5 U.S.C. § 706(2)(A) (1970); *Camp v. Pitts, supra* note 39, 411 U.S. at 142, 93 S.Ct. at 1244, 36 L.Ed.2d at 111; *Citizens to Preserve Overton Park v. Volpe, supra* note 39, 401 U.S. at 416, 91 S.Ct. at 823, 28 L.Ed.2d at 153.

ment memoranda from the parties,[99] we find that the present applicants for certification have not survived these requirements.

Upon receipt, in turn, of the Doraiswamy and Lao applications for certification, the Manpower Administration's job-applicant files were examined, and resultantly it was concluded that the American labor supply for the alien-occupied positions was plentiful.[100] On reconsideration of the certifying officer's decision so holding, that conclusion in each instance was affirmed.[101] For Doraiswamy's job, more than 40 applicants for auditor posts were registered; [102] for Lao's, there were more than 100 registrants possessing entry-level qualifications as systems analysts.[103] Surely these data "suggest[ed] the availability of workers to perform the job[s] which the alien[s] seek[ ]." [104]

■ There was, too, specific administrative treatment of the special job requirements which the employers had set. The response to AMTRAK's need for traveling auditors was that "[t]here is no indication that [the applicants on file] have placed travel restrictions on their employment. In the absence of such restrictions we must assume that these registrants have no objection to travel on the job and hence are willing and available, as well as qualified, for the employment opportunity described in the application" for certification.[105] Honeywell's insistence upon experience-qualified applicants was confronted with the undisputed circumstance that Lao had "received only 19 days of formal training other than on the job experience gained with" Honeywell,[106] and with the administrative view "that familiarity or experience with an individual employer's specific type of equipment can only be acquired on the job and that on-the-job training on company equipment is normal for the occupation." [107] As we have heretofore held, "[i]i is well within the Secretary's discretion to ignore employer specifications which he deems, in accordance with his labor market expertise, to be irrelevant to the basic job which the employer desires

**99.** We heretofore entered orders directing counsel for appellants to file memoranda answering, in each instance "on the basis of the record on appeal," a series of inquiries as to appellants' efforts to find domestic workers able, willing, available and qualified to perform the duties requisite to the positions occupied by the alien employees for whom labor certifications are sought. The orders granted the Secretary's counsel leave to file responsive memoranda. In that manner we hoped to derive assistance in identifying and interpreting relevant portions of the administrative records.

Appellants filed their memoranda, and the Secretary responded, but he also moved to vacate our orders, reasoning that

[s]ince the Court already has in its possession the evidence submitted by the applicants to the Secretary, the Court must be soliciting new evidence which was not submitted to the Secretary. This seems to us to indicate on the part of the Court, an intent, at least in part, to review the decision of the Secretary de novo. In our view, the Court should not look behind the record established before the agency and consider issues not raised below. Motions to Vacate at 3.

Each of our orders posed three questions. Each order, we reemphasize, expressly told counsel to address the questions "on the basis of the record on appeal." With that degree of explication, the orders hardly suggested that we were asking for a discussion of evidence not presented to the Secretary or that we would undertake to consider any aspect of his decisions de novo. On the contrary, the orders stated in the plainest way that the questions were to be answered within the confines of the records on appeal. Since the very limited discovery obtained in the District Court, see notes 13, 30 supra and accompanying text, did not extend to appellants' recruitment efforts, it seemed apparent that only the administrative records could furnish predicates for the answers. We accordingly denied the motions to vacate.

**100.** See notes 9, 27 supra and accompanying text.

**101.** See text supra at notes 12, 29.

**102.** See text supra at note 12.

**103.** See note 29 supra and accompanying text. See also text infra at note 106.

**104.** See text supra at note 98.

**105.** See text supra at note 12.

**106.** See text supra at note 29.

**107.** See not 29 supra.

performed";[108] his obligation rather, "is simply to locate 'a class of workers who, while possibly not meeting the prospective employer's personalized job description, do provide the employer with the potential for getting the job accomplished.'"[109] That responsibility was fully discharged here.

 Thus the "presumption against admission of aliens for the purpose of performing labor"[110] went into operation at this point, and placed on the applicants for certification the burden of demonstrating "that it [was] not possible for the employer to find a qualified American worker."[111] The applications were denied because appellants' efforts to rebut the presumption were administratively unacceptable.[112] AMTRAK's reference to recruitment advertisements that it had placed in several newspapers fades to relative insignificance in light of the fact that only one of the advertisements was published in Washington. It was the local labor market that bore primary importance, for the administrative decision had to be made, as it was, on the basis of American-worker availability "at

the place to which the alien is destined to perform . . . labor. . . ."[113] Honeywell's recruitment activities suffer similarly from their occurrence largely in localities far removed from the Washington metropolitan area, and additionally from their call for extensive experience[114] and their offer of a salary disproportionately low in comparison with the experience demanded.[115] Even more crucially, neither AMTRAK nor Honeywell saw fit, prior to the administrative decision, to utilize the Manpower Administration's job-applicant referral service[116] as a means of obtaining the domestic talent they professed to welcome.[117] An employer may not circumvent the strictures of Section 212(a)(14) by the simple expedient of tailoring job requirements to fit non-unique qualifications of a prospective alien employee.[118] Nor can an alien be rewarded, at the expense of qualified American workers, for experience gained while working in direct violation of his immigration status.

 In each of these cases, the District Court, advertently to *Pesikoff*,[119] ap-

108. *Pesikoff v. Secretary of Labor, supra* note 5, 163 U.S.App.D.C. at 202, 501 F.2d at 762 (footnote omitted). "If the Secretary were required to find an individual American worker who met all the personal specifications of the prospective employer of each alien seeking Section 212(a)(14) certification, the burden on him in performing his statutory duty to protect the American labor market would be much greater than Congress intended . . .." *Id.* See also *Acupuncture Center v. Dunlop, supra,* note 5, 543 F.2d at 860.

109. *Acupuncture Center v. Dunlop, supra* note 5, at 18, quoting *Pesikoff v. Secretary of Labor, supra* note 5, 163 U.S.App.D.C. at 203, 501 F.2d at 763.

110. See text *supra* at note 98.

111. *Pesikoff v. Secretary of Labor, supra* note 5, 163 U.S.App.D.C. at 201, 501 F.2d at 761. See also *Acupuncture Center v. Dunlop, supra* note 5, at 19.

112. See text *supra* at notes 12, 29 and note 29 *supra.*

113. See note 1 *supra.*

114. Although Lao had been hired with little or no sophistication on computers, see notes 27,

29 *supra* and accompanying text, the advertisements required two to five years of experience.

115. See note 29 *supra.*

116. See note 70 *supra* and accompanying text.

117. Compare *Acupuncture Center v. Dunlop, supra* note 5, at 19; *Pesikoff v. Secretary of Labor, supra* note 5, 163 U.S.App.D.C. at 204, 501 F.2d at 764.

118. See *Pesikoff v. Secretary of Labor, supra* note 5, 163 U.S.App.D.C. at 203, 501 F.2d at 763.

119. Appellants' arguments collapse as their underpinning is eroded by our decisions in *Pesikoff v. Secretary of Labor, supra* note 5, which they endeavor unsuccessfully to distinguish, and in *Acupuncture Center v. Dunlop, supra* note 5, announced after these appeals were submitted. Appellants also say that the *Pesikoff* holdings are wrong and suggest that they should be overruled. It suffices to merely point out that this proposal should be addressed to the court *en banc* since as a panel we do not possess that kind of authority. See, *e.g., Lenkin v. District of Columbia,* 149 U.S.App.D.C. 129, 144, 461 F.2d 1215, 1230 (1972); *Insurance*

praised on the administrative records [120] the Secretary's survey of the labor market,[121] the applicants' responses to their resulting burden of proof,[122] and the administrative determinations that in neither instance had the burden been carried.[123] In the situations presented, the court was unable to discern any error of law or abuse of discretion,[124] nor can we.[125] The judgments appealed from are accordingly

*Affirmed.*

*Agents' Int'l v. NLRB,* 104 U.S.App.D.C. 218, 260 F.2d 736 (1958), *aff'd,* 361 U.S. 477, 80 S.Ct. 419, 4 L.Ed.2d 454 (1960); *Davis v. Peerless Ins. Co.,* 103 U.S.App.D.C. 125, 127, 255 F.2d 534, 536 (1958).

**120.** See text *supra* at notes 14–19, 31–34.

**121.** See text *supra* at notes 15–16, 33–34.

**122.** See text *supra* at notes 18, 33.

**123.** See text *supra* at notes 19, 33–34.

**124.** See text *supra* at notes 17, 32, 34.

**125.** Compare *Acupuncture Center v. Dunlop, supra* note 5, at 19; *Pesikoff v. Secretary of Labor, supra* note 5, 163 U.S.App.D.C. at 204, 501 F.2d at 764.