SINGLE SCREW COMPRESSOR, INC., Plaintiff,

v.

U.S. DEPARTMENT OF NAVY, et al., Defendants.

Aurora Technology Corporation, Intervenor.

Civ. A. No. 91–2217.

United States District Court, District of Columbia.

May 13, 1992.

Stephen T. Sullivan, Thomas Winland, Washington, D.C., for plaintiff.

Steven Tryon, John Martin, U.S. Dept. of Navy, Office of Counsel, Bethesda, Md., for defendants.

William F. Fawcett Jr., James Greene, Bromley, Greene & Walsh, Washington, D.C., for intervenor Aurora Technology.

## MEMORANDUM OPINION AND ORDER

SPORKIN, District Judge.

This case comes before the Court on the Defendants, U.S. Department of the Navy's ("Navy"), Motion to Dismiss or in the Alternative for Summary Judgment. Because this Court finds that there are no genuine issues of material fact and that the Defendants are entitled to judgment as a

matter of law, the Defendants' motion for summary judgment is granted.

## FACTUAL BACKGROUND

Summary judgment may be granted to the moving party if

"the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."

Fed.R.Civ.P. 56(c). Under *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), summary judgment is appropriate "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish an element essential to that party's case and on which that party will bear the burden of proof at trial."

In deciding a motion for summary judgment a district court must view the available evidence in a light most favorable to the non-moving party. *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Therefore, for the purposes of this motion, the Court accepts the following facts as not in dispute.

The Plaintiff in this case is Single Screw Compressor, Inc. ("Single Screw"), a company that manufactures rotary single screw air compressors, products which are used to power shipboard systems by the United States Navy. Defendants are the United States Department of the Navy and various Navy officials at the David Taylor Research Center ("Navy") involved with the defense contract at issue in this case. Aurora Technology Corporation ("Aurora") is the party with whom the Navy did execute the contract at issue.

Several years ago a Navy engineer who was visiting Aurora on other business was shown drawings for a Cylindrical Orthogonal Cylindrical Arrangement ("COCA") air compressor. COCA is a term coined by Aurora which describes an air compressor in which the gaterotors, or the parts of the compressor that turn the cylindrical screw, are all at perpendicular angles to that screw. Such an instrument, should it work, would be a new and unique design for a single screw compressor. Transcript of Argument on Motion for Summary Judgment at 21 ("Tr."). The Navy engineer was interested in Aurora's new design, but at the time there was no money available in the Research Center's budget to pursue this new design.

In 1991 money did become available in the Research Center's budget, and the center decided to obtain one prototype of Aurora's COCA design. The Navy's sole object was to test the prototype to see whether further research into the COCA concept was desirable. Because the Research Center believed that Aurora was the only supplier who had developed COCA technology, the Navy decided to proceed on a sole source procurement pursuant to 10 U.S.C. § 2304(c)(1).

In April, 1991 Mr. Leonard Sundue, the Contracting Officer assigned to this project, initiated the prerequisite steps to negotiating a sole source procurement with Aurora. On April 10, 1991 Sundue prepared a Justification For Other Than Full and Open Competition. The reason stated in the Justification for proceeding on a sole source basis was as follows:

Aurora's unique design for the COCA may provide higher pressure capability (300 psig +) than what has been demonstrated for single screw or rotary technology to date. This prototype would be set up at DTRC for testing and evaluation....

The use of the [statutory] authority cited is because Aurora Technology has the proprietary unique design concept of the COCA. This concept offers potential for higher volumetric efficiency, improved bearing loading and performance, reduced structural loading and simplified manufacturing and assembly. In addition the design offers significantly fewer parts (few valves, lower noise), better balancing, higher reliability and reduced manufacturing cost.

*See* Complaint at Exhibit B. Mr. Sundue made one error in preparing the Justifica-

tion. He incorrectly stated that a public notice concerning the contract had been placed in the April 3, 1991 Commerce Business Daily ("CBD") and that there had been no response. In point of fact, the CBD notice was not published until May 9, 1991.[1]

During the week of May 6, 1991 the Navy sent Aurora the solicitation. Aurora submitted a proposal to supply the prototype COCA compressor on May 17, 1991. The Justification was circulated to obtain the necessary review. The final approval signature was placed on the document on May 20, 1991.

In a letter dated June 11, 1991 Plaintiff informed the Navy that it also intended to submit a proposal by 3:00 p.m. on June 26, 1991. In addition, the Plaintiff requested additional information about COCA technology because to Plaintiff the term COCA was "in and of itself meaningless." A.R. 173. The Navy responded that all the information that would be provided was contained in the solicitation. Plaintiff never submitted a proposal for the contract.

The contract to provide one COCA prototype for testing was awarded to Aurora on a sole source basis. The total value of the contract is approximately $120,000.00. The only purpose of the contract is to allow the Navy to test the COCA concept in order to see if it will work. The Navy has unequivocally stated that should it decide to actually install COCA compressors, the relevant contracts will be awarded pursuant to open competition, after drawings of the COCA equipment have been made available to all bidders. Nonetheless, Plaintiff filed a protest with the General Accounting Office. That protest was dismissed as untimely. A.R. 278–280. Plaintiff brought this action challenging the Navy's decision to award the initial contract for the COCA prototype on a sole source basis.

## DISCUSSION

The scope of this Court's review in a challenge to a procurement decision brought under the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.*, is narrow. This Court must limit its review to the materials contained in the administrative record. *See Doraiswamy v. Secretary of Labor,* 555 F.2d 832, 839–841 (D.C.Cir. 1976). In addition, the Court may only overturn a government procurement decision if Plaintiff meets its burden of showing that the decision has no rational basis or involved a clear and prejudicial violation of applicable statutes or regulations. *See Nat. Maritime Union of America v. Commander MSC,* 824 F.2d 1228, 1239 (D.C.Cir.1987) (disappointed bidder must carry "especially heavy burden"); *Kentron Hawaii Limited v. Warner,* 480 F.2d 1166, 1169–1170 (D.C.Cir.1973). Plaintiff has not shown that the Navy's decision to proceed as it did was without a rational basis or that any procedural error made by the Navy was prejudicial. Therefore, this Court will not second guess the Navy's decision.

The Navy is permitted to negotiate a sole source procurement as provided by 10 U.S.C. § 2304(c)(1). That statute provides, in relevant part:

The head of an agency may use procedures other than competitive procedures only when—the property or services needed by the agency are available from only one responsible source or only from a limited number of responsible sources and no other type of property or services will satisfy the needs of the agency.

In this case it cannot be disputed that "the property or services needed by the agency"—COCA technology—was only available from Aurora. Plaintiff admitted as much at oral argument. Tr. at 21. No company other than Aurora was able to submit a proposal responsive to the Navy's solicitation. In fact, one company responded by saying the COCA concept described

---

1. As a result of that notice, five companies made initial inquiries concerning the contract, including Plaintiff's licensee Dresser–Rand. The same solicitation as was forwarded to Aurora was sent to each of these five companies. None of the five ever submitted a proposal for the contract. In addition, one of the five companies, Compressed Air Equipment, specifically told the Navy that the compressor contemplated by its solicitation would be impossible to design.

in the Navy's solicitation was physically impossible.

■ Plaintiff could not respond because it did not even know what COCA was. Instead, Plaintiff requested further information from the Navy. The Navy correctly refused to provide such information. If the government were forced to divulge every detail of a company's new idea to a competitor, than no company would be willing to come to the government with a novel or innovative concept. That result is unacceptable. The Navy or other government agencies cannot be so musclebound that such agencies are incapable of pursuing new technologies, even if only to test them to ascertain whether they will work, without going through the elaborate competitive bid process. The purpose of 10 U.S.C. § 2304(c)(1), therefore, is to provide the procurement process with a degree of flexibility. Since COCA was a unique concept developed by Aurora, the Navy was correct to conclude that it could only have obtained COCA from Aurora.

It is equally apparent that "no other type of property or services [could] satisfy the needs of the agency." 10 U.S.C. § 2304(c)(1). What the Navy was buying was a new concept—one prototype of what it hoped was a 'better mousetrap'—which it could test to see if it was, in fact, a source for a better supply of compressed air. New and unique ideas are inherently appropriate for a sole source procurement because, by definition, there is no substitute for something that is unique.

■ The Plaintiff claims that it has the right under the statute to suggest alternative equipment which may better meet the "needs of the agency." Plaintiff, in effect, asserts that the Navy must seek its advice to see whether there might be some alternative to COCA technology which it might be wiser for the Navy to pursue. Such a position is without basis. The Navy is not required to obtain the approval or even the input of untold numbers of defense contractors in choosing which types of new technology it will pursue or when it will do so. Were that not the case, contractors such as the Plaintiff would have a say as to

whether the Navy should procure conventional submarines instead of nuclear submarines—battleships instead of aircraft carriers—propeller planes instead of jets.

Plaintiff, in effect, is attempting to play the role of "spoiler." It admits that it cannot supply the Navy with a COCA prototype—but nevertheless seeks to inject the competitive bidding process to prevent the Navy from pursuing the COCA concept. That is not the purpose of competitive bidding. It must be the province of the Navy, not private contractors, to decide when and if it will research and develop such new technologies as COCA. The contract at issue in this case is solely for a single COCA prototype which the Navy wishes to test and study. Future procurement will be competitive. Because the Navy rationally determined that no instrument except COCA could fulfill the Navy's needs, it was appropriate for the Navy to proceed on a sole source basis.

■ Finally, the Plaintiff claims that this Court must rescind the Navy's contract with Aurora because there was an error in the Justification concerning the CBD notice. "One complaining of procedural irregularity in the procurement process must first show that the alleged error at least potentially affected the substantive result." *Kentron Hawaii, Limited v. Warner*, 480 F.2d at 1181. In *Kentron* the Court upheld the procurement decision of the Navy despite its failure to send out wage data to all bidders because that failure was not prejudicial. Similarly, the failure in the present "Justification" to list the correct date that the CBD notice ran was not prejudicial. The notice was run as soon as the Navy discovered its error and five companies, including Plaintiff, did in fact respond to it and were sent the same solicitation as Aurora. Because of the new and unique nature of the COCA concept none was able to submit a proposal despite having adequate time to do so. Therefore, like *Kentron* the incorrect date in the CBD notice was "harmless error." *Id.* at 1181. This is particularly so here where the Navy made what can only be termed an honest error. There is nothing at all in the record to

suggest that the misstatement in the "Justification" was an attempt to favor a particular contractor or that the procurement process was slanted in favor of Aurora in any way whatsoever. Under these circumstances the Plaintiff has failed to show that the Navy's sole source award to Aurora was either irrational or prejudicial to the Plaintiff. The Defendants' motion for summary judgment will be granted.