BAR BEA TRUCK LEASING CO., INC., PLAINTIFF *v.* UNITED STATES ET AL., DEFENDANTS

Court No. 82-4-00582-S

Before NEWMAN, *Judge.*

(Dated September 8, 1982)

*Fredrick J. Gross, Esq.*, for the plaintiff.

*J. Paul McGrath*, Assistant Attorney General, *Joseph I. Liebman*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch *(John J. Mahon*, Assistant Branch Director and *Saul Davis, Esq.)*, for the defendants.

BERNARD NEWMAN, *Judge:* Plaintiff Bar Bea Truck Leasing Co., Inc. (BBT) seeks judicial review of the denial of its application for a customhouse cartage license (CCL) by the United States Customs Service Director of the Newark Area on June 29, 1982.

## BACKGROUND

This litigation has a highly complex factual background, which is reviewed in this Court's recent decision, *Bar Bea Truck Leasing Co. v. United States,* 4 CIT — (1982). As may be noted from my prior opinion, this case evolves from the amendment of plaintiff's fourth cause of action in Court No. 82-4-00582, contesting the denial of plaintiff's license application. That amended cause of action was severed for separate proceedings.

Briefly, the pertinent facts at this juncture are: By letter dated March 24, 1982, plaintiff applied for a CCL, pursuant to the provisions of 19 CFR § 112.21, *et seq.* In response to such application, the Newark Area Director of the United States Customs Service, Benjamin C. Jefferson, notified plaintiff by letter dated June 29, 1982:

> In a letter dated March 24, 1982, you applied for a customhouse cartage license, pursuant to the provisions of 19 CFR Part 112. Based on a report of investigation and other information in our files, I cannot grant your application.
>
> The application is denied for the following reasons: Firstly, the report of investigation contains information which leads me to believe that the corporation is financially unstable. This financial instability is evidenced by a lawsuit instituted against you, by the outstanding United States federal tax liabilities and Certificates of Debts filed by the State of New Jersey.
>
> Secondly, since early as 1977, the applicant has admittedly used CHL No. 1777, issued to another bonded cartmen [sic], to carry on a customhouse cartage business.
>
> I consider these two matters to be serious impediments to the issuance of a customhouse cartage license to you.

Except for the foregoing letter of June 29, 1982, no portion of the administrative record has been received by the Court.

On August 2, 1982 plaintiff served a notice upon defendants providing for the taking of depositions upon oral examination of Mr. Jefferson and of Agent James Coble. The scope of the depositions, as stated in the notice, concerns "all aspects of his [Jefferson's] decision to reject plaintiff's application for a customhouse cartman's license" and "all aspects of his [Coble's] investigation into plaintiff's suitability for a customhouse cartman's license". Plaintiff's notice also requested, in conformance with Rule 30(b)(2) and Rule 34 of the Rules of this Court, the production at the time and place of depositions of all documents, writings, logs and similar tangible things which relate to the subject matter of the depositions (excepting those documents that are privileged in their entirety, as to which plaintiff requests that a list of the same be produced).

Defendants have interposed objections to the taking of depositions at this time and have moved under Rule 26(c) of this Court for a protective order that the requested discovery "not be had". Specifically, defendants object to the proposed depositions on the

ground that the Court lacks subject matter jurisdiction of the action; and further, if this Court has jurisdiction of a case involving the denial of a customhouse cartman's license application, such a cause of action would fall under 28 U.S.C. 1581(i). Consequently, according to defendants, the scope of review is governed by 28 U.S.C. 2640(d), and hence should be on the administrative record under 5 U.S.C. 706.

### JURISDICTIONAL ISSUE

Defendants moved in Court No. 82–4–00582 to dismiss the amended fourth cause of action regarding the denial of BBT's application for a cartage license on jurisdictional grounds. However, and in view of the severance of that cause of action, I denied defendants' motion to dismiss without prejudice to renewal of the motion in this severed action. Since the threshold jurisdictional issue has again been raised here in connection with defendants' motion for a protective order, and inasmuch as that issue has been fully briefed by the parties, I will discuss initially the jurisdictional issue in the present application for a protective order.

Defendants' jurisdictional challenge may be readily disposed of since the rationale in *DiJub Leasing Corp.* v. *United States,* 1 CIT 42, 505 F. Supp. 1113 (1980) is dispositive in the instant case.

In *DiJub,* the issue raised by defendants' motion to dismiss was whether this Court had jurisdiction to review a decision of the Commissioner of Customs revoking the customhouse cartage license of the plaintiff corporation. Subject matter jurisdiction was asserted by plaintiff under 28 U.S.C. 1581(i) (1) and (4), which is a broad residual grant of jurisdictional authority to this Court over—

* * * any civil action commenced against the United States, its agencies, or, its officers, that arises out of any law of the United States providing for—
(1) revenue from imports or tonnage.

\* \* \* \* \* \* \*

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

After reviewing the statutory provisions and regulations in the Customs and Tariff laws providing for the licensing of customhouse cartmen and describing the role of the cartman in international trade, and the application form for a customhouse cartage or lighterman's license, together with the form of bond required for such license (Customs Form 3855), I found in *DiJub* that "the primary objective of licensing and bonding cartmen and lightermen is to secure the revenue from imports on which customs duties have not yet been paid" (505 F. Supp. at 1116); and therefore this Court had jurisdiction under section 1581(i) (1) and (4), as claimed by plaintiffs.

The rationale of *DiJub* is that matters pertaining to the licensing of customhouse cartmen are intertwined with and directly related to the administration and enforcement of the laws providing for revenue from imports, and hence such matters fall within the Court of International Trade's exclusive jurisdiction under 28 U.S.C. 1581(i) (1) and (4).

Further, the *DiJub* opinion noted the Court of International Trade's explicit parallel jurisdiction over the review of administrative action pertaining to the licensing of customhouse brokers under 28 U.S.C. § 1581(g) and "could perceive of no reason why Congress would grant this Court jurisdiction in the case of customhouse brokers' licenses and intend to withhold jurisdiction respecting cartmen's licenses." In this aspect, it should be noted that section 1581(g) specifically grants the Court of International Trade exclusive jurisdiction of a civil action commenced to review the *denial* of a customhouse broker's license.

In sum, I find here that a civil action commenced to review the denial of a customhouse cartman's license arises out of the administration and enforcement of a law of the United States providing for revenue from imports within the meaning of 28 U.S.C. § 1581(i) (1) and (4), and accordingly this Court has jurisdiction over the subject matter of the present action.

Defendants' reliance upon my recent decision in *United States* v. *Biehl & Co.,* 3 CIT 158 (1982) is misplaced. There, the issue presented was whether the Court of International Trade has jurisdiction over a lawsuit *commenced by the United States* for the recovery of tonnage duties and light money. The Government predicated jurisdiction of the action on 28 U.S.C. § 1582(2). Defendants moved to dismiss the action contending that it did not fall within the purview of section 1582 and that subject matter jurisdiction properly existed in the appropriate district court under the provisions of 28 U.S.C. § 1340. After determining that an action for the recovery of tonnage duties and light money did not fall within the purview of section 1582(2), we considered whether section 1581(i) was applicable. On that score, I found that while Congress expanded the Court's jurisdiction to include tonnage cases in section 1581(i), the statute expressly limits the Court's residual jurisdiction to those actions commenced *against* the United States. The short of the matter is that in *Biehl* this Court declined to "exercise subject matter jurisdiction that Congress surely must have intended to grant the Court of International Trade, but in fact *excluded by the express language of the statute"* (emphasis added). By contrast, in section 1581(i), Congress did not even intimate, much less express, any intent to exclude jurisdiction over actions contesting the denial or revocation of a cartman's license.

In support of its jurisdictional challenge in this case, defendants also point up the fact that an applicant for a customhouse broker's license must pass a competency examination (see 19 CFR

§ 111.11(4)), while an applicant for cartage license need not take a competency examination. While it is true that such distinction exists between applications for a broker's and cartage license, I am unable to perceive any jurisdictional significance of the requisite examination for brokers.

Defendants' argument appears to be that there is no jurisdictional basis in section 1581(i) for addressing such issues as the character, qualifications and experience of the applicant for a cartage license or the nature and fitness of the equipment to be used. I cannot agree with that contention. If an applicant is properly denied a cartman's license for lack of character, experience, etc., such administrative action is clearly for the security of the revenue from imports on which custom duties have not yet been paid, which is the primary objective of licensing and bonding cartmen.

Consequently, I hold that the Court of International Trade, rather than the District Court, has jurisdiction in this case.[1]

## SCOPE AND STANDARD OF REVIEW

In order to decide whether the depositions noticed by plaintiff should be permitted, the Court must preliminarily determine the scope and standard of review applicable in this case.

Defendants maintain that the proposed depositions are precluded because the scope and standard of review in this case are governed by the provisions of 28 U.S.C. § 2640(d), and thus the action must be reviewed as provided in the Administrative Procedure Act (APA), 5 U.S.C. § 706, viz., on the administrative record. Plaintiff agrees that judicial review in this action is governed by APA section 706 of Title 5, but insists that there should be a trial *de novo,* and thus discovery by depositions is permissible.

There can be no doubt that the decision of Customs to deny plaintiff's application for a cartage license is subject to judicial review within the framework of the APA, 5 U.S.C. § 701, *et seq.* See *Citizens to Preserve Overton Park* v. *Volpe,* 401 U.S. 402, 410 (1970). But the question raised in this proceeding respecting the scope and standard of judicial review applicable under 5 U.S.C. § 706 cannot be decided in the present posture of the case. An initial difficulty that I encounter in considering whether review should be solely on the administrative record as urged by defendants, or *de novo* as insisted by plaintiff, is that here, we have no administrative "record" in the usual sense of that term. The Area Director was not required by law to hold a formal hearing upon plaintiff's application, or its denial, and so far as I am aware, he held no hearing. Plain-

---

[1] Defendants do not argue that no judicial review at all is availabe for the denial of a cartman's license. Therefore, the jurisdictional dispute appears to be whether the Court of International Trade or the United States District Court for the District of New Jersey should hear the cause of action respecting the denial of plaintiff's license application. Were it determined that the Court of International Trade lacks jurisdiction of an action to review the denial of a cartman's license, the action would not be dismissed, as urged by defendants. Rather, "where a party errs in invoking the jurisdiction of this Court, the salutary 28 U.S.C. § 1584(b) provides for the transfer of the action to the appropriate district court, in the interest of justice". *United States* v. *Biehl & Co.,* 3 CIT 158 (1982).

tiff now complains that it has had no opportunity whatsoever to be heard in the administrative investigation, which fact is not disputed by defendants.

Indeed, all that we have in the way of a "record" is the Director's letter of June 29, 1982, which refers to plaintiff's letter application of March 24, 1982 and a report of investigation. These latter two documents are not before the Court. Defendants, of course, have had access to the administrative record upon which the Director relied in denying the application, but neither plaintiff nor this Court has seen that record. Hence, we are unable to determine what evidence was considered and upon which the administrative decision was based, except to the extent disclosed in the June 29, 1982 letter to plaintiff.

In summary, although defendants' position may be correct, I conclude that the questions of the applicable scope and standard of review and whether plaintiff should be permitted to proceed with the proposed depositions should be decided only after the full administrative record is before the Court. At that point, the Court may then satisfy itself concerning certain relevant factors: the adequacy of the fact-finding procedure pursued by the Director; the evidence which was adduced in the investigation and considered by the Director; and the extent, if any, of plaintiff's opportunity for participation in the investigation. See *e.g. Citizens to Preserve Overton Park* v. *Volpe, supra; Camp* v. *Pitts,* 411 U.S. 138 (1972); *FPC* v. *Transcontinental Gas Pipe Line Corp.,* 423 U.S. 326, 331 (1975); *Chandler* v. *Roudebush,* 425 U.S. 840, 861–62 (1975); *Secretary of Labor* v. *Farino,* 490 F.2d 885, 889–893 (7th Cir. 1973); *Doraiswamy* v. *Secretary of Labor,* 555 F.2d 832, 839–843 (D.C. Cir. 1976).

## Conclusion

In light of all the facts and circumstances, it is hereby ordered:

1. Plaintiff's notice of depositions served on August 2, 1982 and defendants' motion for a protective order shall be held in abeyance until the full administrative record has been transmitted to the Court; and

2. The Area Director at Newark, New Jersey shall within thirty (30) days from the date of the entry of this order prepare and transmit to the Clerk of the Court of International Trade, as the administrative record in this action, certified copies of plaintiff's letter of application dated March 24, 1982, the report of investigation, the notice of denial of the application dated June 29, 1982, and all other information on file adduced before the Area Director pertaining to plaintiff's application.