**NATIONAL TREASURY EMPLOYEES UNION, et al., Plaintiffs,**

v.

**L. William SEIDMAN, Chairman, Federal Deposit Insurance Corporation and Constance Berry Newman, Director, Office of Personnel Management, Defendants.**

**Civ. A. No. 90–2161 SSH.**

United States District Court, District of Columbia.

Feb. 24, 1992.

---

Elaine Debra Kaplan, Gregory James O'Duden, Timothy B. Hannapel, Nat. Treasury Employees Union, Washington, D.C., for plaintiffs.

David B. Orbuch, Asst. U.S. Atty., U.S. Attorney's Office, Washington, D.C., for defendants.

## MEMORANDUM ORDER

STANLEY S. HARRIS, District Judge.

This matter is before the Court on defendants' motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(1); defendants' motion to strike a portion of plaintiffs' request for relief pursuant to Fed.R.Civ.P. 12(f); plaintiffs' motion for a continuance to take discovery pursuant to Fed.R.Civ.P. 56(f); and on defendants' motion for a protective order staying discovery pursuant to Fed. R.Civ.P. 26(c). The National Treasury Employees Union (NTEU) and the four individually-named plaintiffs[1] meet the constitutionally mandated standing requirements; therefore, this Court has subject matter jurisdiction over this action. Accordingly, defendants' rule 12(b)(1) motion is denied. The Court reserves ruling on defendants' motion to strike plaintiffs' request for automatic conversion of current liquidation graded (LG) employees to the competitive

---

1. Carl Deck, Belinda A. Gentry, Lynn Harris, and Ramon F. Hernandez.

service. Accordingly, defendants' rule 12(f) motion is denied without prejudice to the defendants' right to reassert it. Plaintiffs' requested discovery is not appropriate, and plaintiffs' rule 56(f) motion is therefore denied. Defendants' rule 26(c) motion is granted.

*Background*

The individually-named plaintiffs are LG employees who work on the liquidation of failed banks' assets. Plaintiff NTEU is a union that represents over 100,000 government workers. Defendants are the Chairman of the Federal Deposit Insurance Corporation (FDIC) and the Director of the Office of Personnel Management (OPM).[2] Plaintiffs challenge defendants' decision to designate LG employees as temporary and to exclude their positions from the competitive service. Plaintiffs allege that the OPM's regulation which delegates authority to the FDIC to except LG positions from the competitive service is contrary to law and in violation of the Administrative Procedure Act, 5 U.S.C. § 701. Specifically, plaintiffs contend that it is not impracticable to conduct a competitive examination for LG positions. (Complaint ¶ 29); *see* 5 C.F.R. § 213.3133. Plaintiffs also contend that "the use of this authority by the FDIC is arbitrary, capricious and contrary to law." (Complaint ¶ 30.)

Federal civil service employees, with the exception of those in the Senior Executive Service, are placed in either the "competitive service" or the "excepted service." 5 U.S.C. § 3302. Applicants for jobs within the competitive service are required to participate in a formal process which includes a competitive examination. Agencies hire employees for competitive service positions from lists of candidates with the top scores on the examination.[3] Because a competitive examination is not practical in every situation, Congress granted the President the authority to make "necessary exceptions" from the competitive service.[4] 5 U.S.C. § 3302. Excepted service positions are divided into three classifications: Schedules A, B, and C. Since 1939, LG positions have been placed under Schedule A authority, which includes "positions other than those of a confidential or policy-determining character for which it is not practicable to examine." 5 C.F.R. § 6.2.

LG employees, whose positions are at issue in this case, work to liquidate the assets of failed banks all over the country. The government has consistently stated that a competitive examination is not practicable, and thus that LG positions properly belong under Schedule A. The government states three reasons: (1) there is a need to hire staff immediately after a bank fails to ensure that the process of liquidation and paying depositors is accomplished as quickly as possible; (2) LG positions are often filled by former bank employees who are most familiar with the bank and its customers; and (3) the positions are not really permanent, because once the liquidation is complete there no longer is work for the LG employees. Plaintiffs' central contention is that the LG employees have suffered an injury through their inferior job status, which includes poor benefits and no job security, because the FDIC improperly placed their positions in the excepted service.

*I. Standing*

Courts established by Congress under its Article III power are courts of limited jurisdiction. This Court's jurisdiction is limited to the resolution of real "cases or controversies." U.S. Const. art. III, § 2. The "case or controversy" requirement includes the concept of standing, which requires that a plaintiff challenging an act of government have a real and personal stake in the outcome of the litigation. The standing requirement ensures that Article III

---

**2.** Defendants will be referred to collectively as "the government."

**3.** The competitive examination process was established to ensure that the most qualified candidates receive jobs and to curb nepotism and other unfair hiring practices.

**4.** Subsequently, the President delegated this authority to the OPM. Exec.Order No. 10577, 5 C.F.R. § 6.1(a).

courts are not used as a forum in which to seek opinions that are merely advisory. *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975).

> [A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant" ... and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision." (Citations omitted).

*Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). The plaintiffs have alleged facts sufficient to meet all three of these requirements to satisfy the threshold question of standing.

### (A) *Individually–Named Plaintiffs*

[2] The individuals named as plaintiffs in this suit are all FDIC LG employees in the excepted service and are members of the NTEU. They claim that the allegedly illegal classification of LG positions in the excepted service has injured them in the past and continues to injure them by bestowing inferior job status upon them. The government counters plaintiffs' contention, stating that "[p]resent LG employees are the beneficiaries—not the victims—of the allegedly invalid excepted hiring authority they are attacking. *See, e.g., Presseisen v. Swarthmore College*, 442 F.Supp. 593, 625–26 (E.D.Pa.1977), *aff'd* 582 F.2d 1275 [(3rd Cir.1978)]." (Defendants' motion to dismiss, p. 28). The government's reliance on *Presseisen* is misplaced. In that case, the female plaintiffs alleged that the defendant employer's recruiting policy was sexu-

ally discriminatory, although the plaintiffs themselves received interviews. The Court held that "these women could not be victims of a sexually discriminatory recruitment policy since, in fact, they were interviewed." *Presseisen*, 442 F.Supp. at 626. In this case, the alleged injury is not plaintiffs' employment in the excepted service, but rather the denial of an opportunity to apply for a position in the competitive service with its superior job status. Therefore, the fact that plaintiffs received jobs does not negate the injury. Defendants suggest that the individual plaintiffs "benefited" from the exception because they did not have to compete for their positions. Although the allegedly illegal regulation did permit plaintiffs to be hired, it also prevented them from applying for the same position with superior benefits. Plaintiffs therefore assert adequate facts to meet the first *Valley Forge* standing requirement that there be injury in fact.

 Plaintiffs have met the third requirement, that a favorable decision would be likely to redress the injury, as well.[5] Redressability does not require that every requested form of relief be attainable, but rather that the injury is likely to be alleviated if the plaintiff is successful.[6] The government asserts that the claim is not redressable because one form of requested relief, the conversion of all LG employees in the excepted service to the competitive service, is contrary to law. Therefore, the government has requested, pursuant to rule 12(f), that this form of relief be stricken from the plaintiffs' complaint.

Regardless of whether or not this form of relief is legally permissible, plaintiffs have requested other remedies.[7] If the

---

**5.** Properly, the government focused its standing argument only on the first and third requirements of *Valley Forge*. The Court does not address the second requirement that the injury be traceable to the act as there is no reasonable contrary argument.

**6.** When considered in the larger context of the standing requirement, redressability ensures that Article III courts are only used to *resolve* actual cases or controversies. If redressability were not required, a court's role would be re-

duced to that of an advisory board, because its decisions would not have an impact on the litigants. This requirement further ensures that Article III courts are not used to create principles of law, but rather to settle real disputes.

**7.** In addition to asking for declarations that the hiring authority is illegal, plaintiffs request that the Court order OPM to "establish and administer a competitive examination for LG positions" and that "[the Court grant] such other relief as [it] deems just and proper."

Court were to order a competitive examination, in theory it would (or could) benefit those employees who would prefer the opportunity to be examined for a competitive service position rather than remain in the excepted service. The government argues that such an order would likely result in some current LG employees losing their jobs if they are forced to take an examination. This argument, while having some validity, fails to take into account the equitable powers of the Court which could allow it to craft an order that would not adversely affect those employees who, through no fault of their own, might be deemed to have been improperly hired into the excepted service. *Swann v. Charlotte–Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15, 91 S.Ct. 1267, 1275, 28 L.Ed.2d 554 (1971). The plaintiffs' alleged injuries are redressable, and the individual plaintiffs thus have satisfied the standing requirement.

### (B) *The Union*

The NTEU has standing to bring this suit on behalf of its members.[8] A union has standing to bring an action on behalf of its members if it can demonstrate that:

> (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Washington Apple Comm.*, 432 U.S. 333, 333, 97 S.Ct. 2434, 2436, 53 L.Ed.2d 383 (1977). The NTEU has met each prong of this test. First, the individual union members do, in fact, have standing to challenge the hiring authority. Second, it is germane to a union's purpose to protect its members' job security and benefits.

Finally, plaintiffs limit their requests to injunctive and declaratory relief, so no individual participation is required as would be the case if the Court needed to measure specific individual damages. *United Auto Workers v. Brock*, 477 U.S. 274, 287–88, 106 S.Ct. 2523, 2531, 91 L.Ed.2d 228 (1986). The NTEU has satisfied the conditions of the *Hunt* test, and therefore it has standing to bring this suit on behalf of its members.[9]

### II. *Defendants' Rule 12(f) Motion To Strike*

Because the Court decides that the plaintiffs' injuries are redressable whether or not the requested conversion is legally permissible, the Court finds it inappropriate to rule on the motion to strike at this time. If plaintiffs are unable to demonstrate that defendants' decision to place LG positions in the excepted service was arbitrary, capricious, or contrary to law, the Court will not have to reach the relief issue. Therefore, the Court denies the motion to strike without prejudice.

### III. *Plaintiffs' Rule 56(f) Motion for a Continuance*

Plaintiffs request an opportunity to conduct discovery of personnel files and records under the control of defendants. Plaintiffs assert that these records will demonstrate that defendants' reasons for excepting LG positions are contrary to the evidence that was before them. Specifically, plaintiffs say they need additional discovery to prove that the FDIC does not "often" hire employees from the failed banks or hire employees "immediately" after a bank failure, and that the LG positions are not truly temporary. (Hannapel declaration.) Plaintiffs present two arguments in favor of this discovery. First, the information was contained in defendants' files and must have been indirectly con-

---

**8.** The NTEU has also alleged that it has standing on its own behalf. It is unnecessary to decide that issue at this time because the Court concludes that the NTEU has representational standing. There is no requested relief that would require that the NTEU have standing on its own behalf.

**9.** The Court finds the government's argument that the NTEU can not litigate on behalf of its LG employee members until it is certified as their collective bargaining representative to be meritless. Representational standing requires that an organization have members with an interest in the suit, not that it be officially certified as a collective bargaining representative.

sidered in the decision-making process, and thus is properly within the administrative record. Second, and alternatively, if defendants did not consider the information in the decision-making process, they should have considered it. Thus, the Court now may review the information. Both arguments fail.

 This case arises under the APA and the regulation in question may be set aside only if the Court determines that it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2).[10] Review under this standard is limited to the administrative record that was before the decision-making agency and may not include a new record constructed by the reviewing Court. *Camp v. Pitts*, 411 U.S. 138, 143, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973). "If a court is to review an agency's action fairly, it should have before it neither more nor less information than did the agency when it made its decision." *Walter O. Boswell Memorial Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C.Cir.1984). Although the Court is limited to review of the administrative record, the agency may not unilaterally determine the scope of the record by leaving out records detrimental to its case. *Environmental Defense Fund, Inc. v. Blum*, 458 F.Supp. 650, 661 (D.D.C.1978).

 Plaintiffs have not provided a basis for the Court to look beyond the record to evaluate their challenge to defendants' employment policy. In the absence of evidence that the agency has given a false reason for its policy, discovery is inappropriate in cases under the APA. Plaintiff asks the Court to review defendants' employment records to determine whether the agency actually hires bank employees

"often" or "immediately" and whether LG employees are in fact "temporary." A *de novo* decision on those points is beyond the Court's scope of review. Nor should the Court make its own determination whether it is impracticable to conduct examination for the jobs at issue; that judgment is properly left to the agency absent an arbitrary decision.[11] Plaintiffs' rule 56(f) motion is denied because it would create a new administrative record for the purpose of second-guessing the agency. Defendants' rule 26(c) motion is granted. Accordingly, it hereby is

ORDERED, that defendants' motion to dismiss is denied. It hereby further is

ORDERED, that defendants' motion to strike requested relief from the complaint is denied without prejudice. It hereby further is

ORDERED, that plaintiffs' motion for a continuance to take discovery is denied. It hereby further is

ORDERED, that defendants' motion for a protective order is granted. It hereby further is

ORDERED, that plaintiffs shall file their opposition to defendants' motion for summary judgment within 21 days of the date of this Order.

SO ORDERED.

---

**10.** Under the APA, the reviewing court should find the regulation to be arbitrary and capricious only if it finds that the agency:

 has relied on factors which Congress has not intended it to consider, [2] entirely failed to consider an important aspect of the problem, [3] offered an explanation for its decision that runs counter to the evidence before the agency, or [4] [the regulation] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n v. State Farm Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983).

**11.** Even if this discovery were allowed, it would not help the Court to render a decision based on the arbitrary and capricious standard. The Court may *not* substitute *its* judgment for that of the decision-making agency. *Motor Vehicle Mfrs.*, 463 U.S. at 43, 103 S.Ct. at 2866.