NATIONAL TREASURY EMPLOYEES UNION, Carl Deck, Belinda A. Gentry, Lynn Harris, and Ramon E. Hernandez, Plaintiffs,

v.

Andrew C. HOVE, Jr., Acting Chairman, Federal Deposit Insurance Corporation,

and

Constance B. Newman, Director, Office of Personnel Management, Defendants.

Civ. A. No. 90–2161.

United States District Court, District of Columbia.

Jan. 11, 1994.

Gregory O'Duden, Elaine Kaplan, Timothy Hannapel, NTEU, Washington, DC, for plaintiffs.

Asst. U.S. Atty. David B. Orbuch, U.S. Atty.'s Office, Civ. Div., Washington, DC, for defendants.

## *OPINION*

STANLEY S. HARRIS, District Judge.

This case is before the Court on plaintiff's recent application for a preliminary injunction and on the cross-motions for summary judgment, which have been at issue for some time. Also before the Court are defendants' motion to exclude from consideration material outside of the administrative record, plaintiffs' motion to compel, and defendants' renewed motion to strike. Upon consideration of the entire record, including the arguments of counsel at the hearing held on January 8, 1994, the Court grants defendants' motion for summary judgment, and defendants' motion to exclude. Therefore, the Court denies as moot plaintiffs' application for a preliminary injunction, plaintiffs' motion to compel, and defendants' renewed motion to strike. Although "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56," the court nonetheless sets forth its analysis. *See* Fed. R.Civ.P. 52(a).

### *Background*

Plaintiffs are the NTEU, a union that represents over 100,000 government workers, and four individually named FDIC employees.[1] These named plaintiffs hold "liquidation graded" (LG) positions: they assist in liquidating the assets or paying the depositors of failed banks or closed savings and loan institutions. Although applicants for most federal civil service jobs are required to take a competitive examination before being considered for a position, since 1939, LG

positions have been exempt from this requirement.[2] Plaintiffs claim that as a result of being improperly placed in the "excepted service," employees in LG positions suffer poor benefits and lack job security.

Congress granted the President the authority to make "necessary exceptions of positions from the competitive service." 5 U.S.C. § 3302. Subsequently, the President delegated to the OPM the authority to "except positions from the competitive service when it determines that appointments thereto through competitive examinations are not practicable." Exec. Order No. 10,577, 5 C.R.R. § 6.1(a). Pursuant to this delegated authority, the OPM promulgated a regulation permitting the FDIC to dispense with the competitive examination procedure when hiring LG employees.[3] The 1989 regulation excepts from competitive service:

> [a]ll Liquidation Graded, temporary field positions concerned with the work of liquidating the assets of closed banks or savings and loan institutions, of liquidating loans to banks or savings and loan institutions, or of paying the depositors of closed insured banks or savings and loan institutions. New appointments may be made under this authority only during the 5–year period following a bank or savings and loan institution closing and/or establishment of a consolidated liquidation site.

5 C.F.R. § 213.3133(a).[4]

Plaintiffs challenge the legality of this hiring regulation excluding LG positions from the competitive service. Specifically, they allege that it is not impracticable to require a competitive examination for LG positions and that the OPM arbitrarily relied on invalid justifications in concluding that an examination would not be feasible. Therefore, they claim that the OPM regulation granting the

---

1. Carl Deck, Belinda A. Gentry, Lynn Harris, and Ramon F. Hernandez.

2. This Court's Memorandum Order of February 24, 1992, which held, *inter alia*, that plaintiffs have standing to sue, provides more information about the competitive service hiring process. *See National Treasury Employees Union v. Seidman*, 786 F.Supp. 1041, 1043 (D.D.C.1992).

3. Excepted service positions are divided into three classifications: Schedules A, B, and C.

The FDIC excepted LG positions pursuant to its Schedule A authority, which permits the exemption of "positions other than those of a confidential or policy-determining character for which it is not practicable to examine." 5 C.F.R. § 6.2.

4. At the time plaintiffs filed their complaint, the OPM had reviewed, and renewed or amended this authority on four separate occasions: 1954, 1982, 1985, and 1989.

FDIC authority to exempt LG employees violates the Administrative Procedure Act because it is arbitrary, capricious, and contrary to civil service law. *See* 5 U.S.C. § 706(2)(A).[5]

Cross-motions for summary judgment were fully briefed on December 1, 1992. Before the Court could issue an Opinion resolving the case, plaintiffs informed the Court that the OPM had undertaken a review of all Schedule A authorities for temporary and seasonal employment. *See* Pl.s' Application for Prelim. Inj. at Ex. 9. On December 2, 1993, the OPM amended the FDIC's Schedule A authority to except from competitive service:

> [u]ntil June 1, 1996, all Liquidation Graded, temporary field positions concerned with the work of liquidating the assets of closed banks or savings and loan institutions, of liquidating loans to banks or savings and loan institutions, or of paying the depositors of closed insured banks or savings and loan institutions. No new appointments may be made under this authority after December 31, 1993.

*Id.* at Ex. 11. On December 10, 1993, plaintiffs filed an application for a preliminary injunction to enjoin the FDIC from reorganizing its operations and terminating LG employees pending the Court's ruling on the cross-motions for summary judgment.

Because the Court grants defendants' motion for summary judgment, it denies plaintiffs' motion for a preliminary injunction as moot. In addition, the Court finds that because plaintiffs do not appear to be challenging the OPM's December 2, 1993, action as arbitrary and capricious or otherwise contrary to law, the motion to compel is not properly before the Court and also is denied as moot.[6]

### Discussion

#### Motion To Exclude

■ This case arises under the Administrative Procedure Act (the APA), 5 U.S.C.

§ 702 *et seq.* Review under the APA is limited to the administrative record that was before the decision-making agency and may not include a new record constructed by the reviewing court. *Camp v. Pitts*, 411 U.S. 138, 142–43, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973). "If a court is to review an agency's action fairly, it should have before it neither more nor less information than did the agency when it made its decision." *Walter O. Boswell Memorial Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C.Cir.1984); *see also Doraiswamy v. Secretary of Labor*, 555 F.2d 832, 839–40 (D.C.Cir.1976); *Polcover v. Secretary of Treasury*, 477 F.2d 1223, 1226 (D.C.Cir.1973) (recognizing that a district court's review is limited to the agency record submitted and that "[n]o *de novo* evidentiary hearing is permitted"), *cert. denied*, 414 U.S. 1001, 94 S.Ct. 356, 38 L.Ed.2d 237 (1973).

■ A court may consider evidence outside the administrative record "for the limited purposes of ascertaining whether the agency considered all the relevant factors or fully explicated its course of conduct or grounds of decision." *Asarco, Inc. v. EPA*, 616 F.2d 1153, 1160 (9th Cir.1980) (citing *Association of Pacific Fisheries v. EPA*, 615 F.2d 794, 811 (9th Cir.1980)). Courts admit outside evidence primarily as a means of requiring an agency to explicate its own reasoning when the record is unclear. *See Asarco*, 616 F.2d at 1159 ("any additional material should be explanatory in nature, such as requiring the involved administrative officials to demonstrate the basis for their action"); *see also Camp*, 411 U.S. at 142–43, 93 S.Ct. at 1244 (remedy for unclear record is to obtain from the agency additional explanation of the reasons for decision); *Citizens To Preserve Overton Park v. Volpe*, 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971) (court may require the administrative officials who participated in the decision to give testimony explaining their action); *Environmental Defense Fund v. Costle*, 657

---

**5.** Plaintiffs claim that this OPM regulation violates civil service laws, which generally require a competitive examination and allow exceptions only when warranted by administrative reasons. *See* 5 U.S.C. §§ 1104, 3302, and 3304.

**6.** If plaintiffs seek to challenge the December 2, 1993, action under the Administrative Procedure Act, they could file a new complaint against that action as related to this case.

F.2d 275, 285 (D.C.Cir.1981); *Doraiswamy,* 555 F.2d at 842–43. Explanatory outside evidence also may be considered by a court if the subject matter of the original record upon which the agency based its decision was highly technical. *See Bunker Hill Co. v. EPA,* 572 F.2d 1286, 1292 (9th Cir.1977).

Plaintiffs assert that the Court may properly consider the evidence they seek to add to the record because this additional information will aid the Court in determining whether the OPM took into account all relevant factors. The Court disagrees. The information plaintiffs seek to add concerns factors actually considered by the OPM—namely, the FDIC's practice of hiring former employees of failed banks, the urgency with which the FDIC must hire LG employees, and the temporary nature of LG positions. The Court finds that this outside evidence does not serve to explicate the OPM's rationale for its decisions regarding the FDIC's LG exemption or bring to light any important aspects of the situation not already addressed in the administrative record; nor does this information clarify a complex, technical, or otherwise confusing element of the administrative record.

■ The only apparent purpose of plaintiffs' outside evidence is to cast doubt on the wisdom of the OPM's decisions. However, consideration of outside evidence "to determine the correctness or wisdom of the agency's decisions is not permitted." *Asarco,* 616 F.2d at 1160; *see also Costle,* 657 F.2d at 286 (judicial review of outside evidence should never "examine the propriety of the decision itself"); *Bunker Hill Co.,* 572 F.2d at 1292 (additional materials should contain no new rationalizations); *Doraiswamy,* 555 F.2d at 842 (distinguishing a court's ability to require additional agency explanation from appellants' improper attempts to challenge the correctness of the agency's decision). Accordingly, the Court grants defendants' motion to exclude.

*Summary Judgment Motions*

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ Under the APA, a Court may set aside agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "[T]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). This standard is " 'highly deferential' and presumes the validity of agency action." *Motor Vehicle Mfrs. Ass'n v. Ruckelshaus,* 719 F.2d 1159, 1164 (D.C.Cir. 1983). A court's task is to determine "whether the agency's decision-making was 'reasoned.' " *American Horse Protection Ass'n v. Lyng,* 812 F.2d 1, 5 (D.C.Cir.1987). Judicial review of agency action should be limited to a determination that the agency considered the relevant data, and that the policy concerns and other factors underlying the agency's decision have some basis in the record. *See National Treasury Employees Union v. Horner,* 854 F.2d 490, 498 (D.C.Cir. 1988); *Costle,* 657 F.2d at 283.

A reviewing court should find an agency regulation to be arbitrary and capricious if it finds that the agency:

> ■ relied on factors which Congress has not intended it to consider, [2] entirely failed to consider an important aspect of the problem, [3] offered an explanation for its decision that runs counter to the evidence before the agency, or [4] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n v. State Farm,* 463 U.S. at 43, 103 S.Ct. at 2867.

■ The OPM found a competitive exam to be impracticable primarily for three reasons: (1) the FDIC's urgent need to hire LG employees after a bank fails, (2) the suitability of a failed bank's employees or others from the area who were familiar with the local economy, and (3) the temporary nature of these LG positions. Plaintiffs claim that these explanations are not supported by the evidence. They also assert that the explanations are incomplete because other important aspects of the situation were not considered. Consequently, plaintiffs contend that the regulation is arbitrary and capricious under either factor two or three of the *Motor Vehicle* test.[7] The Court disagrees.

The record shows that the OPM's explanation for its decision was consistent with the evidence. The challenged version of the FDIC's LG hiring authority was promulgated in 1989, when the OPM amended the hiring regulation to take into account the FDIC's newly legislated responsibility for failed savings and loan institutions. The OPM's past approval of the FDIC's LG exemption was based on findings that the FDIC needed to hire LG employees "on a very short-term notice from among persons readily available … and qualified." Defs.' Mot. for Summ.J., Ex. 2 at 4.[8] The OPM also had found that familiarity with the operations of a failed bank was valuable for purposes of paying depositors, and that knowl-

edge of local economic conditions facilitated liquidation of a bank's assets. *Id.* In addition, previous records supported the OPM's conclusion that because the FDIC's future employment needs for liquidation work were uncertain, the employees necessarily were hired only on a temporary basis. *Id.*, Ex. 3 at 7.

In the OPM's 1989 review of the FDIC's LG exemption, it concluded that "conditions justifying exception—urgency of initial hiring, desirability of picking up some staff from closed banks, and uncertain future employment needs—" remained valid. *Id.* The OPM found that the FDIC's new duties with regard to failed savings and loan institutions would parallel its responsibilities as receiver of closed banks. Therefore, the OPM concluded that the rationale justifying the FDIC's prior authority to hire quickly, locally, and for limited periods of time, applied equally as well to LGs working on failed savings and loans. *Id.*, Ex. 4 at 3.

■ The Court finds that the record amply supports the OPM's conclusions.[9] The Court further finds that the OPM proficiently addressed the important considerations necessitating the LG exemption. Thus, the Court finds that none of the *Motor Vehicle* factors compel a finding that the OPM's promulgation of the FDIC's LG hiring authority was arbitrary and capricious.[10] Therefore,

---

7. There is no dispute with respect to whether the OPM relied on factors intended by Congress. The agency consistently tested whether hiring LG employees through the competitive process remained impracticable. In addition, the information and analysis found in the administrative record demonstrate that the OPM's decisions were clearly plausible, especially in light of the agency's expertise in personnel matters. Thus, neither the first nor fourth factors for assessing agency action show that these OPM decisions were arbitrary.

8. The Court finds that the OPM was not required to conduct an independent investigation of the FDIC's hiring practices or request additional evidence from the FDIC to support its claims in this regard. Plaintiffs have cited no statute requiring this additional information, and the Court has been unable to find one. *See generally* Annotation, *Exemption From APA Rulemaking*, 41 A.L.R. Fed. 926, §§ 9–10 (1979) (concerning the exemption of matters relating to agency management or personnel from the APA's rulemaking require-

ments, including the formal findings requirement).

9. The Court rejects plaintiffs' claim that changing conditions had invalidated the OPM's reasoning and that the OPM failed to take these changes into consideration.

10. Plaintiffs also claim that the OPM neglected its regulatory duty to ensure that the FDIC's LG hiring authority was being administered properly. *See* Federal Personnel Manual Ch. 213, Subch. 2–3(a). As evidence of this neglect, plaintiffs rely on the FDIC's failure to submit, and the OPM's failure to demand, an estimated number of positions likely to be filled under the FDIC's LG hiring authority. This documentation was required by a regulation that had been enacted only one month earlier. Federal Personnel Manual Ch. 213, Subch. 2–4a(3)(a)(iv).

Agency decisions not to enforce a regulation are presumptively unsuitable for judicial review. *Heckler v. Chaney*, 470 U.S. 821, 831, 105 S.Ct.

the Court finds that defendants' action did not violate the APA. Accordingly, the Court grants defendants' motion for summary judgment and denies plaintiffs' motion for summary judgment.

### Conclusion

For the foregoing reasons, the Court grants defendants' motion for summary judgment and denies plaintiffs' motion for summary judgment. The Court also grants defendants' motion to exclude. The Court denies as moot plaintiffs' application for a preliminary injunction, plaintiffs' motion to compel, and defendants' renewed motion to strike. An appropriate Order accompanies this Opinion.

1649, 1655, 84 L.Ed.2d 714 (1985). "An agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise ... [, and a]n agency generally cannot act against each technical violation[.]" *Id.* Although a court may review major policy decisions, "day-to-day personnel management decisions" are presumptively unreviewable. *NTEU v. Horner,* 854 F.2d at 496; see also *American Horse Protection Ass'n,* 812 F.2d at 3–4. The Court finds that the FDIC's failure to submit an estimated number of future LG employees constitutes merely a technical violation. In addition, the Court finds that the OPM's decision not to enforce this requirement was an everyday personnel management decision that is unsuitable for judicial review.